[Nos. 13516-7-II; 13523-0-II.   Division Two.   July 22, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. OFELIO M. VAZQUEZ, ET AL, *Appellants.*

574

*Ronald D. Heslop, Jesse R. Taylor, Brett A. Purtzer,* and *Law Offices of Monte Hester, Inc., P.S.,* for appellants (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn-Brintnall, Senior Appellate Deputy,* for respondent.

ALEXANDER, J. — Ofelio Vazquez appeals his conviction on two counts of unlawful possession of a controlled substance (cocaine and heroin) with intent to deliver. His codefendant, Jose Valdez, appeals his conviction on one count of posses-

sion of a controlled substance (cocaine) with intent to deliver. We affirm.

A confidential informant set up a telephone call between Tacoma Police Undercover Officer Herman Koppisch and Ofelio Vazquez. The purpose of the call was to arrange for Koppisch to purchase controlled substances from Vazquez. The conversation resulted in Koppisch agreeing to purchase a half kilo of cocaine and a half ounce of heroin from Vazquez the next day. Vazquez selected the El Rancho motel in Pierce County as the site for the transaction.

Koppisch arrived at the motel carrying $10,000 as purchase money. Once inside the motel, Koppisch made contact with Vazquez. Vazquez then introduced Koppisch to Jose Valdez. According to Koppisch, when he made a request to see the cocaine, Vazquez appeared to signal Valdez with his eyes. Koppisch said that Valdez responded to the signal by checking to assure that the door was locked and peering through the closed drapes, before stationing himself by the door. Vazquez then produced a package from inside his shirt. The package contained a white powder which Koppisch believed was cocaine. While the substance was being unwrapped, Koppisch stated to Valdez that "we just want to make sure that nobody walks through that door. I don't want to get surprised."

Koppisch then asked Vazquez if Vazquez could show him the heroin. Koppisch testified that at this time another visual signal was passed from Vazquez to Valdez. Vazquez produced the heroin from his right boot and showed it to Koppisch, then put it back into his boot. Koppisch then signaled other police officers who were waiting outside. They entered, arrested Vazquez and Valdez and seized the cocaine and heroin.

Valdez and Vazquez were each charged with two counts of unlawful possession of a controlled substance (cocaine and heroin) with intent to deliver, pursuant to RCW 69.50.401-(a)(1)(i).

The defendants moved before trial to discover the name of the confidential informant who had arranged the telephone call between Koppisch and Vazquez. The judge presiding at the hearing on their motions granted an in camera hearing to determine the relevance of the informant's testimony. Approximately a week later, when the informant could not be located, the judge reconsidered his decision and reversed the earlier ruling for an in camera hearing. In the meantime, Valdez and Vazquez had filed additional motions to obtain the name of the confidential informant and to require him or her to testify. These motions were denied. Valdez's motion to sever was also denied.

At trial, before another judge, both defendants made motions to dismiss, claiming the denial of their request for an in camera hearing resulted in a "manifest injustice" and a violation of their "rights". These motions were denied, the trial judge concluding that he would not grant a motion to dismiss, even if he was inclined to do so, because it would amount to a reversal of another superior court judge's decision.

The defendants were tried together. A jury found Vazquez guilty of both counts of unlawful possession of a controlled substance with intent to deliver. He received an exceptional sentence of 72 months. Valdez, who had earlier waived trial by jury, was found guilty by the trial court of one count of unlawful possession of a controlled substance (cocaine) with intent to deliver and not guilty on the other charge. He received an exceptional sentence of 120 months.

Valdez appeals, challenging the denial of his motion to sever, the sufficiency of the evidence to support his conviction, the denial of his request for an in camera interview with the confidential informant, and his exceptional sentence. Vazquez appeals the denial of his request for an in camera interview with the confidential informant, the denial of his motion to dismiss, and his exceptional sentence.

## I
## DENIAL OF MOTION TO SEVER

■ Valdez contends that the trial court erred in not severing his trial from Vazquez's. He argues that he was entitled to severance because there was a strong likelihood that the large volume of evidence offered against Vazquez would "spill over", and that their defenses were "mutually or irreconcilably antagonistic". This assignment of error is without merit. We reach that conclusion because, in essence, their trials were severed. Although Vazquez and Valdez were tried together, Vazquez's case was tried to a jury, whereas Valdez submitted his case to the trial judge. Because the trial judge independently reviewed the evidence against Valdez, the severance was as complete as if the jury trial and nonjury trial had been conducted at separate times. Furthermore, the trial judge would reject from his consideration on the issue of Valdez's guilt or innocence any evidence that was admissible against Vazquez and not admissible against Valdez.[1] Valdez, having voluntarily waived his right to a trial by jury, cannot now complain about the fact that his bench trial was conducted at the same time as Vazquez's jury trial.

## II
## SUFFICIENCY OF EVIDENCE TO SUPPORT
## VALDEZ'S CONVICTION

■ Valdez asserts that there was insufficient evidence to support his conviction on the charge of possession of a controlled substance (cocaine) with intent to deliver. The standard of review on a challenge to the sufficiency of evidence is whether, "after viewing the evidence most favorable to the State, any rational trier of fact could have found the essential elements of [the crime] beyond a reasonable doubt." (Italics omitted.) *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)). Valdez argues that the evidence was insufficient to satisfy the State's bur-

---

[1]Counsel for Valdez has not called to our attention any such evidence.

den on its theory that he was an accomplice to the possession of the cocaine with intent to deliver.[2] Accomplice liability is set forth in RCW 9A.08.020, which provides, in part:

A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable.

RCW 9A.08.020(1).

A person is legally accountable for the conduct of another person when:

. . . .

(c) He is an accomplice of such other person in the commission of the crime.

RCW 9A.08.020(2)(c).

A person is an accomplice of another person in the commission of a crime if:

(a) With knowledge that it will promote or facilitate the commission of the crime, he

. . . .

(ii) aids or agrees to aid such other person in planning or committing it . . . .[.]

RCW 9A.08.020(3)(a)(ii).

To prevail on his challenge to the sufficiency of the evidence, Valdez must show that a rational trier of fact could not have found that he knowingly promoted or facilitated the crime of possession of cocaine with intent to deliver. He emphasizes his own trial testimony wherein he stated that he was not involved in the cocaine transaction and that he was in the process of leaving the room when Koppisch asked him to check the window. He was on his way out of the room, Valdez testified, when the officers burst through the door and arrested him. Koppisch's testimony contradicted Valdez. He said that Valdez, after being signaled by Vazquez,

---

[2]RCW 69.50.401(a)(1)(i), unlawful possession of a controlled substance with intent to deliver, provides:

"Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

"(1) Any person who violates this subsection with respect to:

"(i) a controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than ten years[.]"

walked to the door to insure that it was locked, then "peeked" through the window and stood with his ear to the door.

■ At most, Valdez establishes that there was conflicting evidence on the question of whether or not he was an accomplice. All of the evidence was heard by the trial judge who was free to weigh it and make determinations as to the credibility of the various witnesses. Credibility determinations are for the trier of fact and cannot be reversed on appeal. *State v. Camarillo*, 115 Wn.2d 60, 794 P.2d 850 (1990). Under the standards set forth in *Green*, Valdez's challenge to the sufficiency of the evidence fails.

Valdez next points to what he contends is an inconsistency in the trial court's decision: guilty on the cocaine charge, not guilty on the heroin charge. Valdez suggests that because the evidence supporting his guilt was the same for the heroin charge as it was for the cocaine charge, it follows that the evidence supporting the cocaine charge was insufficient. This argument is also meritless. In its oral opinion, the trial court explained that Valdez may not have known that a heroin deal was in progress.[3] Giving Valdez the benefit of a reasonable doubt, it acquitted him on that charge. There is no inconsistency here that justifies a reversal.

### III
### DENIAL OF AN IN CAMERA INTERVIEW
### WITH THE INFORMANT

Valdez and Vazquez both assign error to the trial court's denial of their requests for an in camera hearing with the informant who set up the initial telephone call between Vazquez and Koppisch. They contend that an in camera hearing would have revealed that the confidential infor-

---

[3]The trial court stated: "Now, why do I not convict him of the heroin charge? I am not convinced, beyond a reasonable doubt, that the defendant knew that two drug deals were in progress. Most of the talk regarding the heroin and the display of the heroin was right at the end of the five-minute scenario here.

"The cocaine was produced earlier on and before the defendant could have just known of the cocaine and not of the heroin. I think he knew of the heroin, too. But I am going to give him the benefit of a reasonable doubt in that regard."

mant had information supporting their defense of entrapment. The failure to conduct the hearing, they assert, was an abuse of discretion by the trial court.[4] Vazquez asserts, further, that the failure of the trial court to hold an in camera hearing violated his due process rights.

■■ An in camera hearing to determine whether the identity of an informant should be revealed to a defendant is required only when the defendant makes an initial showing that the informant is a material witness. *State v. Vargas*, 58 Wn. App. 391, 395, 793 P.2d 455 (1990) (citing *State v. Enriquez*, 45 Wn. App. 580, 725 P.2d 1384 (1986), *review denied*, 107 Wn.2d 1020 (1987)). Even if the informant is a material witness, disclosure may not be necessary unless knowledge of the informant's identity would be relevant and helpful to the defendant in light of the "crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *State v. Enriquez*, 45 Wn. App. at 583 (quoting *Roviaro v. United States*, 353 U.S. 53, 62, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957)). "It is the defendant's burden to show (1) an in camera hearing is necessary and (2) disclosure of the informant's identity is warranted in order to insure the defendant a fair trial. . . ." *Vargas*, 58 Wn. App. at 395.

> Bare assertions or conclusory allegations by a defendant that a witness is needed to establish his innocence will not suffice. Instead he must show a basis in fact to establish that his demand does not have an improper motive and is not merely an angling in desperation for possible weaknesses in the prosecution's investigation.
>
> On this point the nature of the informant's role is of some significance. Undoubtedly the strongest case for disclosure is made out when it appears that the informant was an eyewitness or a participant in the alleged crime.

*State v. Vargas*, 58 Wn. App. at 396 (quoting *People v. Goggins*, 34 N.Y.2d 163, 313 N.E.2d 41, 356 N.Y.S.2d 571, *cert. denied*, 419 U.S. 1012 (1974)).

---

[4]Disclosure of informants is governed by statute and court rule. RCW 5.60-.060(5), known as the informant's privilege, provides:

"A public officer shall not be examined as a witness as to communications made to him or her in official confidence, when the public interest would suffer by the disclosure."

■■ The decision whether to hold an in camera hearing is within the trial court's discretion, and shall not be disturbed absent a clear showing of abuse. *State v. Vargas, supra*. Abuse of discretion is discretion which is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Valdez and Vazquez argue that the informant was a material witness as to their entrapment defense. The defense of entrapment is defined by RCW 9A.16.070, which reads as follows:

> (1) In any prosecution for a crime, it is a defense that:
> (a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and
> (b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.
> (2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

In support of his request for an in camera hearing, Vazquez testified at a pretrial hearing that a "fat man" approached him in Yakima and offered him employment in Tacoma. He said that this man drove him and Valdez to Tacoma and paid for their motel room. Finally, he said that the man gave Vazquez a package, told him to conceal it in his pants and "deliver it when the friend got there, when the other guy got there, and that he would leave some money there." Vazquez also testified that he had no knowledge of the package of heroin, which was found concealed in his boot following his arrest. Neither Valdez nor Vazquez offered any more than pure speculation that the "fat man" was the informant or that he was in any way connected with law enforcement. Neither did they allege that this man lured or induced them into agreeing to commit a crime they would not otherwise commit. Rather, Vazquez appeared to suggest, at the pretrial hearing, that he unwittingly possessed the drugs in question. Valdez's counsel argued, simply, that Valdez had no knowledge of what had occurred in the motel room.

■ A party seeking review has the burden of perfecting the record so that the reviewing court has before it all of the relevant evidence. *State v. Garcia*, 45 Wn. App. 132, 140, 724 P.2d 412 (1986). Neither Valdez nor Vazquez has provided this court with the police report, which was admitted as evidence in the pretrial hearing on the motion to disclose the informant's identity. *State v. Blight*, 89 Wn.2d 38, 46-47, 569 P.2d 1129 (1977); *State v. Garcia, supra*; RAP 9.2(b). The record of the pretrial hearing shows that the police report contradicts Vazquez's assertion that he did not know what was in the package. Furthermore, it appears that the police report showed that Valdez was aware of the contents of the package and that he acted as a lookout during the transaction. Certainly, the defendants' acts of negotiating with Koppisch during the transaction evidenced an intent to deliver drugs and conflicts with their claim of unwitting possession.

■ Our Supreme Court has held that an informant was not a material witness when the facts alleged by the defendant failed, as a matter of law, to establish a defense of entrapment. *State v. Smith*, 101 Wn.2d 36, 42, 677 P.2d 100 (1984); *see also State v. Enriquez, supra* (even assuming the defendant's testimony was corroborated by informant, entrapment fails as a matter of law). More recently, Division One of the Court of Appeals held that a mere tipster, who told the police how to contact the defendant but was not a witness to the transaction, could serve no purpose material to the defense. *State v. Sanchez*, 60 Wn. App. 687, 806 P.2d 782 (1991).

In short, Vazquez and Valdez have offered no evidence to establish that the "fat man" likely was the informant who set up the initial telephone call between Koppisch and Vazquez or that he was a government agent. Even assuming that they made such a showing, they have failed to show that this person is a material witness who can offer evidence that is relevant. The culpability of the defendants is based almost entirely on their behavior in the motel room. Because no one other than the defendants and Officer Kop-

pisch was present during the drug transaction, the informant could not offer evidence bearing on what transpired. The informant, in short, is not a witness who would be helpful to the defendants and we cannot say, therefore, that the trial court's denial of the defendants' request for an in camera hearing was manifestly unreasonable or exercised on untenable grounds for untenable reasons.

Vazquez also assigns error to the trial court's denial of his motion to dismiss the charges on the basis that the trial court's denial of the request for an in camera hearing violated his due process rights. This claim fails because Vazquez has failed to establish that the confidential informant was a material witness to the transaction. *Smith*, 101 Wn.2d at 42.

## IV
### EXCEPTIONAL SENTENCES

A. Vazquez.

Vazquez argues that the quantity of drugs he possessed does not justify the trial court's exceeding the standard range.

At sentencing, the trial court reasoned:

1. That the amount of cocaine and heroin involved in this case was substantially more than for personal use. The cocaine seized could have been sold for up to $20,000 on the street. The cocaine seized weighed 496 grams and was one of the six largest seizures of drugs in similar cases by the Tacoma Police Department in the City of Tacoma in 1989. The heroin could have been sold for up to $3,000 on the street.

2. That the current offense was a major violation of the Uniform Controlled Substances Act related to trafficking in controlled substances, which was substantially more onerous than the typical offense.

Vazquez does not challenge these findings. He argues, rather, that they do not support the exceptional sentence. He is incorrect. RCW 9.94A.390, which governs departures from the guidelines, provides, in part:

The following are illustrative factors which the court may consider in the exercise of its discretion to impose an exceptional sentence. . . .

. . . .

The current offense was a major violation of the Uniform Controlled Substances Act, chapter 69.50 RCW (VUCSA), related to

trafficking in controlled substances, which was more onerous than the typical offense of its statutory definition: The presence of ANY of the following may identify a current offense as a major VUCSA:

(i) . . .

(ii) The current offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use; . . . [.]

RCW 9.94A.390(2)(d). Because the statute permits the imposition of an exceptional sentence when the offense is a major violation of the controlled substances act, Vazquez's sentence should be affirmed.

B. Valdez.

In imposing an exceptional sentence on Valdez, the sentencing court gave the same reasons as for Vazquez, then added:

3. That the Court finds that the defendant has been deported as an illegal alien seven times in the last five years, including once on May 2, 1989 and again on August 2, 1989, less than one month before the defendant's commission of the instant offense.

4. That the defendant told the court at sentencing that he would kill someone if the court sent him to prison, and defendant stated to the presentence report writer [that] he would "kill the first person that pissed him off." That it is clear from the defendant's actions and statements that he has no respect or regard for state or federal laws and if he were deported that he would be back again within days.

Clearly, the reasons given for Vazquez's sentence were also valid for Valdez. Valdez maintains, however, that the trial court erred when it considered his prior deportations and postconviction threats of harm to others as reasons justifying departure from the standard range. We agree.

▮▮▮ It is apparent that the sentencing court believed that Valdez's statements and actions showed a disrespect for state and federal laws. This convinced the sentencing judge that Valdez would "be back again within days" if he was not in custody. This reason looks to us very much like a finding of future dangerousness. Future dangerousness is not a basis for an exceptional sentence in nonsexual offense cases. *State v. Barnes*, 117 Wn.2d 701, 711, 818 P.2d 1088 (1991).

586

Having concluded that reasons 3 and 4 do not provide a basis for an exceptional sentence, we must determine whether we should remand for resentencing of Valdez. We conclude that we must remand because we are uncertain whether the sentencing court would have imposed the same sentence on Valdez, using only the two factors that we have found to be appropriate. Our uncertainty is all the greater because of the fact that Vazquez received a sentence of 72 months and Valdez received a sentence of 120 months. This disparity, on the surface, seems unjustified because Valdez was found guilty of only one count, whereas Vazquez was found guilty of two. Consequently, we do not know if the sentencing court would have imposed a sentence on Valdez that is almost twice the length of the sentence it imposed on Vazquez if it had not considered his future dangerousness.

We affirm all of the convictions and Vazquez's sentence. We remand for resentencing of Valdez.

MORGAN, A.C.J., and SEINFELD, J., concur.