FILED
COURT OF APPEALS
DIVISION II

2013 APR 30 AM 8:37

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42535-1-II |
| Respondent, | |
| v. | |
| BRENT CURTIS MOORE, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — Brent Curtis Moore challenges the sufficiency of the evidence supporting his convictions of failure to register as a sex offender, third degree assault, and resisting arrest. Former RCW 9A.44.132 (1)(a) (2010); RCW 9A.36.031; RCW 9A.76.040. Moore raises additional claims of error in a pro se statement of additional grounds (SAG). Because substantial evidence supports Moore's convictions and his remaining claims fail, we affirm.

### FACTS

Moore is required to register as a sex offender with the Clark County Sheriff's Office. The sheriff's office requires registered sex offenders to report within 10 days of their birthday to be rephotographed. On March 9, 2010, Moore registered his address as 7201 NE 109th Avenue in Vancouver, which is his mother's residence. When he failed to report within 10 days of his

birthday in September 2010, Detective Kevin McVicker began to investigate whether Moore still lived at his registered address.

Detective McVicker called the Vancouver residence and spoke with Moore's mother. She told him that she had not seen her son in several months. Deputy Michael Adkins then went to the residence on October 14, 2010, and Moore's mother again said she had not seen Moore in several months and did not know where he was living. Deputy Adkins had her complete a written statement in which she declared, under penalty of perjury, that Moore had moved out in May or June and had left no forwarding address.

In February 2011, Community Corrections Officer Fili Matua received information that Moore was staying at a home owned by Roy Pennington. Matua works for the Department of Corrections, and his job is to locate and arrest wanted offenders. Matua had a photograph of Moore. When Matua and his team arrived at Pennington's house, they encountered Pennington in a nearby shop. Pennington gave Matua permission to contact the residence and when Matua knocked on the front door, Moore opened it. Matua asked if he was Brent Moore, and Moore said, "No." 1 Report of Proceedings (RP) at 108. Matua then told Moore he was under arrest and tried to grab his arm. When Moore pulled away and attempted to close the door, Matua raised his arm to block the closure and several panes of glass in the door shattered. After a short chase into the house, Moore surrendered.

The State charged Moore by amended information with failure to register as a sex offender between August 14, 2010 and February 28, 2011, and with third degree assault and resisting arrest. At his trial, Moore's mother testified that the last time she saw him before his arrest was in May or June 2010. She added that he stopped staying at her house because of an outstanding warrant. On cross-examination, she stated that she believed Moore was in her home

between August 14, 2010 and October 18, 2010, because he kept clothing at her home and did some laundry when she was not there. When asked about her written statement, she testified that she meant only that Moore was not there "[a]t that moment." 1 RP at 62. On redirect, she admitted that Moore did not live at her home between August 2010 and February 2011.

After Detective McVicker testified about his investigation, Deputy Adkins described the affidavit that Moore's mother signed. He testified that she prepared the affidavit and signed it voluntarily, and he explained that obtaining such affidavits is standard procedure for determining whether there is probable cause that a crime has been committed. Officer Matua then described Moore's arrest. At the close of the State's case-in-chief, Moore moved to dismiss, arguing that the evidence was insufficient to support any of the crimes charged. He contended that the evidence did not show that he committed an assault, that he resisted arrest, or that he had in fact moved. After the trial court denied his motion, defense witness Pennington testified that Moore did not reside in the house where he was arrested.

The jury found Moore guilty as charged, and the trial court imposed concurrent standard range sentences for a total sentence of 60 months. Moore moved for a new trial, arguing in part that the evidence was insufficient to show that he had moved. The trial court denied Moore's motion after observing that both direct and circumstantial evidence supported the jury's verdict on the failure to register charge. Moore now appeals his convictions.

## DISCUSSION

### SUFFICIENCY OF THE EVIDENCE

Moore argues that the State produced insufficient evidence to support any of his three convictions. Due process requires the State to prove its case beyond a reasonable doubt. *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983). Evidence is sufficient to support a conviction

3

if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

A.     FAILURE TO REGISTER AS A SEX OFFENDER

To find Moore guilty of the offense of failure to register as a sex offender, the jury had to find that he was required to register as a sex offender between August 14, 2010 and February 25, 2011, and that he knowingly failed to comply with the requirements of sex offender registration. Additional jury instructions explained that if Moore changed his residence or ceased to have a fixed residence, he was required to contact the sheriff's office within three business days.

Moore argues here that the only witness with personal knowledge about his living arrangements was his mother, and he maintains that her testimony was insufficient to prove that he moved from her residence. In a related argument, Moore asserts that when the State solicited her testimony that she told the police he had moved and gave them a written affidavit so stating, the State elicited hearsay that was admissible only to rebut her inconsistent claims at trial and not as substantive evidence on the issue of where he was living.

We do not address the hearsay issue because Moore did not object to his mother's testimony or affidavit on this basis. *See State v. Smith*, 155 Wn.2d 496, 501 n.4, 120 P.3d 559 (2005) (Court of Appeals erred in reaching merits of hearsay argument because issue was not

4

properly preserved at trial); *State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976) (party may assign error in appellate court only on specific ground of evidentiary objection made at trial). Indeed, Moore made no objection at all to the affidavit he challenges on appeal. *See State v. Stein*, 140 Wn. App. 43, 68, 165 P.3d 16 (2007) (party must specifically object to evidence presented at trial to preserve matter for appellate review), *review denied*, 163 Wn.2d 1045 (2008).

Our review of the record shows that Moore's mother testified that he lived with her in early 2010 and that she last saw him, before his February 2011 arrest, in May or June of 2010. She explained that he stopped staying with her because of an outstanding warrant and that he would talk to her by phone but never say where he was staying. She added that she never saw Moore between August 14, 2010 and February 28, 2011. She acknowledged writing an affidavit stating that Moore moved out of her residence in May or June 2010, and she admitted signing it under penalty of perjury. In addition, Detective McVicker testified that when he talked to her in October 2010, Moore's mother said she had not seen her son in several months. Finally, Deputy Adkins testified about the affidavit that Moore's mother signed in which she stated that her son had moved out of her home in May or June 2010.

When viewed in the light most favorable to the State, the evidence is more than sufficient to support Moore's conviction for failure to register as a sex offender.

B. THIRD DEGREE ASSAULT AND RESISTING ARREST

To find Moore guilty of third degree assault, the jury had to find that he assaulted Officer Matua with the intent to prevent or resist the execution of a lawful process or mandate of a court officer, or to prevent his lawful apprehension or detention. To find Moore guilty of resisting

arrest, the jury had to find that he intentionally prevented or attempted to prevent a peace officer from arresting him, and that the arrest or attempted arrest was lawful.

Moore contends on appeal that because Officer Matua acted unlawfully in entering a third party's home to arrest him, the State failed to prove either the lawful process or lawful arrest required for his conviction of third degree assault or resisting arrest.

The State responds that Moore lacks standing to challenge the entry of Pennington's home under either article I, section 7 of the Washington Constitution or the Fourth Amendment. Ordinarily, standing to challenge a search or seizure under the state and federal constitutions requires a defendant to have a legitimate expectation of privacy in the place searched or the thing seized. *State v. Libero*, 168 Wn. App. 612, 616, 277 P.3d 708 (2012). The doctrine of automatic standing applies under the Washington Constitution only if the defendant was charged with a possessory offense. *Libero*, 168 Wn. App. at 617. Otherwise, the rights protected by the Fourth Amendment and article I, section 7 are personal rights that may be enforced by exclusion of evidence "'only at the instance of one whose own protection was infringed by the search and seizure.'" *Rakas v. Illinois*, 439 U.S. 128, 138, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) (quoting *Simmons v. United States*, 390 U.S. 377, 389, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)); *see also State v. Ibarra-Cisneros*, 172 Wn.2d 880, 889, 263 P.3d 591 (2011) (intent behind article I, section 7 is to protect personal rights).

Defense witness Pennington testified that Moore did not live or sleep at the home where he was arrested and came by only "now and then." 2 RP at 135. A casual visitor who is not an overnight guest has no legitimate expectation of privacy in the premises where he is located. *Libero*, 168 Wn. App. at 617 n.4. Because there is no evidence that Moore had any expectation

6

of privacy in Pennington's home, Moore has no standing to challenge the entry of that home under either the Fourth Amendment or article I, section 7.

Moreover, the trial court instructed the jury that an arrest is lawful if made pursuant to an arrest warrant. Moore did not take exception to that instruction and argued in closing only that he did not actually assault the officer or resist arrest. Consequently, he cannot now complain that the jury found his arrest lawful. *See State v. Brown*, 36 Wn. App. 166, 170, 672 P.2d 1268 (1983) (party must follow requirements of CrR 6.15 to preserve issue of instructional error on appeal). The evidence is sufficient to support the jury's guilty verdicts on the charges of third degree assault and resisting arrest.

STATEMENT OF ADDITIONAL GROUNDS

Moore raises two issues in his pro se SAG. He argues first that he never waived his right to a speedy trial, and he seems to contend that his speedy trial rights were violated because he was arrested on February 25, 2011, and not tried until July 25, 2011. There is no evidence in the record to support Moore's claim of a speedy trial violation, however, as there is no record concerning the original trial date or any continuances of that date. We cannot review this claim on this record. *State v. Wheaton*, 121 Wn.2d 347, 365, 850 P.2d 507 (1993); *State v. Vazquez*, 66 Wn. App. 573, 583, 832 P.2d 883 (1992).

Moore adds that the trial court erred in not hearing his *Knapstad* motion on July 20, 2011. A *Knapstad* motion is a pretrial challenge to the sufficiency of the evidence. *State v. Cannon*, 120 Wn. App. 86, 90, 84 P.3d 283 (2004) (citing *State v. Knapstad*, 107 Wn.2d 346, 356-57, 729 P.2d 48 (1986)). Moore asserts that when his attorney brought this motion to the court's attention at a July 21 readiness hearing, the court asked whether there would be time for motions to be heard before jury selection on July 25, and counsel replied in the affirmative.

No. 42535-1-II

We have no record of any proceedings on July 20 or 21, and the only motions discussed in the record of proceedings for July 25 are the State's motions in limine. Although Moore's initial trial attorney did file a *Knapstad* motion, she withdrew a few days later, and there is no other reference to a *Knapstad* motion in our appellate record. In any event, the jury has rendered its verdict and the trial court's treatment of any pretrial motion to dismiss is not appealable. *State v. Jackson*, 82 Wn. App. 594, 608, 918 P.2d 945 (1996), *review denied*, 131 Wn.2d 1006 (1997).

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

HUNT, J.

JOHANSON, A.C.J.