# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MATTHEW HINK, | No. 54003-7-II |
| Respondent, | |
| v. | |
| MELODY RUDE, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Melody Lynn Rude appeals from a civil anti-harassment protection order prohibiting her from contacting her former boyfriend Matthew Karl Hink. She argues that (1) under RCW 10.14.130, the superior court erred in issuing an anti-harassment protection order after finding that a domestic violence protection order would have been appropriate, (2) the superior court erred in allowing the hearing to proceed when it was set after the 14-day period of time designated in RCW 10.14.070 had expired, and (3) the superior court erred in granting an earlier ex parte temporary domestic violence protection order requiring the surrender of weapons.

We hold that (1) because Hink did not seek a protection order based on acts of domestic violence, the superior court complied with RCW 10.14.130, (2) the record is inadequate to review the timing issue, and (3) the surrender of weapons issues relates to a different protection order that is not before us on appeal. Accordingly, we affirm.

FACTS

I. TEMPORARY DOMESTIC VIOLENCE PROTECTION ORDER

On June 12, 2019, Hink petitioned for a domestic violence protection order prohibiting his then-girlfriend Rude from contacting him and excluding her from their shared residence. He also sought a 14-day emergency temporary protection order.

In this petition, Hink "request[ed] temporary surrender of a firearm or other dangerous weapon." Clerk's Papers at 82. In addition to alleging that Rude had committed acts of domestic violence against him, Hink alleged that Rude "possesses a machete and several knives" and that her possession of these weapons presented a serious and imminent risk to his health and safety. *Id*. at 83. The temporary domestic violence protection order was granted, but Hink later "requested that the court deny [the domestic violence protection order] petition" after Rude had moved out of the residence. *Id*. at 4.

II. ANTI-HARASSMENT PROTECTION ORDER

On August 22, Hink filed a new petition seeking an anti-harassment protection order after Rude continued to contact him by text message. Hink supported this petition with an affidavit describing the prior domestic violence incident; the issuance of the temporary domestic violence protection order; and the continuing contact by text message, which he further supported with copies of various text messages between him and Rude.

In the August 22 petition, Hink did not request that Rude be ordered to surrender any weapons. Nor did he allege that Rude "used, displayed, or threatened to use a firearm or other dangerous weapon in a felony," or that she possessed any weapons. *Id*. at 3.

The deputy clerk issued a notice of hearing advising Rude that a hearing on the August 22 petition was set for September 11—20 days after Hink had filed the petition. Both parties appeared at the September 11 hearing. Although our record does not include the transcript from the September 11 hearing, the superior court's minutes from the hearing state that "[t]he court addressed the parties regarding procedural defects and continued this matter," and notes that Rude's counsel requested a continuance. *Id*. at 74. The superior court granted the requested continuance, setting the new hearing for October 9.

At the October 9 hearing, Hink testified and submitted the copies of the various text messages; Rude did not present any testimony. Hink testified that he had been in a dating relationship with Rude for about two years and that they had lived together for about a year and a half. He described the incident that led to his June 12 petition for a domestic violence protection order. Hink stated that he had obtained a two-week temporary domestic violence protection order and that Rude was removed from Hink's house by law enforcement. But he further stated that he did not pursue the domestic violence protection order any further because he "hoped that [they] could resolve things," end the relationship, and divide their property without it. Report of Proceedings at 16.

After the temporary domestic violence protection order expired, Rude began retrieving some of her property from the house and they discussed how to remove the remainder of her property at a later date. Hink asked her several times not to contact him except to address the picking up of her property. This contact led to a series of text messages over an extended period of time between Rude and Hink. When Rude continued to text Hink even after he told her to stop, he filed the petition for the anti-harassment protection order. Hink also presented the superior court

with exhibits containing various text messages. He asserted that from June 8 through August 7, there were more than 1800 text messages between him and Rude.

In closing argument, Hink's counsel argued that Rude's behavior amounted to unlawful harassment and that Hink had demonstrated that he needed a protection order against her "continued harassment and incessant contact." *Id*. at 51. Rude's counsel argued that the text messages were sent for the legitimate purpose of attempting to obtain Rude's property from Hink and that the petition for the anti-harassment protection order was a continuation of Hink's abusive and manipulative behavior toward Rude.

In its oral ruling, the superior court stated,

> The only person that this Court has been able to judge in terms of credibility is Mr. Hink. And at this point in time, Mr. Hink acknowledged there was an incident in which he spat on Ms. Rude. He also has testimony that is uncontroverted that you assaulted him which led to the filing of a domestic violence protection order. *I don't know why this matter is being filed under unlawful harassment as opposed to [a domestic violence protection order], because this Court would be able to find, based off of that evidence, that there would be a basis for domestic violence protection order*, but that's not what's being asked for today. The Court is looking at definitions under [chapter] 10.14 [RCW].

*Id*. at 56 (emphasis added).

The superior court then concluded that although some of the text messages served legitimate or lawful purposes, other messages did not, and that Rude continued to text Hink even after he repeatedly asked her to stop contacting him. The court also noted that Rude continued to contact Hink even after Hink filed the petition for a second protection order and that she had acknowledged in her messages that her messages were annoying him. The court also stated that "the sheer volume of information" was "certainly . . . designed to annoy or harass." *Id*. at 58. Ultimately, the court found that "this cour[se] of conduct . . . seriously alarmed or annoyed or

harassed Mr. Hink," that much of the communication "served no legitimate or lawful purpose," and that these communications caused Hink "to suffer substantial emotional distress." *Id*. Based on these oral findings, the court found "there is a basis, shown by a preponderance of the evidence, for the Court to enter an order of protection under the anti-harassment statute." *Id*.

The superior court entered the anti-harassment protection order. This order did not restrict Rude's access to any weapons or require that she surrender any weapons. The order was good for one year and subject to renewal. The superior court denied Rude's motion for reconsideration.

Rude appeals.

## ANALYSIS

## I. RCW 10.14.130

Focusing on the superior court's remark that the evidence would have provided a basis for issuing a domestic violence protection order, Rude first argues that under RCW 10.14.130 the superior court erred in entering an anti-harassment protection order under chapter 10.14 RCW, when the evidence established domestic violence and a protection order could have been obtained under chapter 26.50 RCW.[1] Because Hink did not seek a protection order based on acts of domestic violence, this argument fails.[2]

---

[1] Hink addresses this argument as a sufficiency of the evidence argument. But Rude does not assert that the evidence was insufficient to support the superior court's findings supporting the anti-harassment protection order; she presents only a legal argument that the court was not authorized to issue an anti-harassment protection order when there was evidence of domestic violence. Accordingly, we do not address the sufficiency of the evidence.

[2] The anti-harassment protection order, issued on October 9, 2019, was effective for only one year and has expired. The parties do not address whether this case is moot in light of that expiration. As the parties did not address mootness, for purposes of this opinion, we assume that the issues are not moot.

RCW 10.14.130 provides, "Protection orders authorized under this chapter shall not be issued for any action specifically covered by chapter 7.90, 10.99, or 26.50 RCW." Although the superior court mentioned that the facts alleged by Hink could have supported a domestic violence protection order, the court did not err in issuing an anti-harassment protection order because Hink sought an order to protect against Rude's harassment, which is not defined as domestic violence, not her previous actions that clearly met the definition of domestic violence.

A party seeking a domestic violence protection order must "allege the existence of domestic violence" and declare "the specific facts and circumstances from which relief is sought." RCW 26.50.030(1). RCW 26.50.010(3) defines "[d]omestic violence" as:

> (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one intimate partner by another intimate partner; or (b) physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

Notably, the definition does not include harassment that does not rise to the level of stalking.

Even if the background facts that Hink testified to could have potentially established more than harassment, Hink did not seek relief based on those facts. Instead, he sought relief solely based on Rude's continued harassment by text message, which would not qualify as an act of domestic violence. Because Hink sought relief based solely on harassment, he could not have brought this action as a domestic violence action under chapter 26.50 RCW, and the superior court did not err in entering an anti-harassment protection order under chapter 10.14 RCW.

## II. TIMING OF HEARING

Rude next argues that the superior court erred in allowing the hearing on the petition for the anti-harassment protection order to proceed when the first hearing was set more than 14 days

after the petition was filed as required under RCW 10.14.070.[3] Hink responds that we should not address this issue because Rude failed to raise this issue prior to this appeal and the issue is not a manifest constitutional error given that RCW 10.14.070's timing requirements are statutory, not constitutional.

"A party seeking review has the burden of perfecting the record so that the reviewing court has before it all of the relevant evidence" necessary to address the issues raised on appeal. *State v. Vazquez*, 66 Wn. App. 573, 583, 832 P.2d 883 (1992). If the record is inadequate for review, we will not consider the inadequately supported issue on direct appeal. *Cowlitz Stud Co. v. Clevenger*, 157 Wn.2d 569, 573–74, 141 P.3d 1 (2006) (declining to rule on an issue where the petitioners failed to provide an adequate record for review). Rude, the party seeking review, has not supplied this court with the transcript of the September 11 hearing. Thus, we cannot determine whether Rude raised this issue in the superior court, whether she waived this issue by failing to raise it, or whether she agreed to proceed despite any procedural defect. Because the record is inadequate to allow review of this issue, we do not further address this issue.

### III. SURRENDER OF WEAPONS

Finally, Rude challenges the portions of the temporary domestic violence protection order addressing her possession of dangerous weapons. But this appeal is from the later anti-harassment protection order, not the earlier temporary domestic violence protection order. Accordingly, this issue is not properly before us and we do not address it.

---

[3] RCW 10.14.070 provides: "Upon receipt of the petition alleging a prima facie case of harassment, . . . the court shall order a hearing which shall be held not later than fourteen days from the date of the order."

CONCLUSION

We hold that (1) because Hink did not seek a protection order based on acts of domestic violence, the superior court complied with RCW 10.14.130, (2) the record is inadequate to review the timing issue, and (3) the surrender of weapons issues relates to a different protection order that is not before us on appeal. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

LEE, C.J.

WORSWICK, J.