IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82303-5-I |
| Respondent, | DIVISION ONE |
| vs. | UNPUBLISHED OPINION |
| PHILLIP DANIEL MARSHALL, | |
| Appellant. | |

MANN, C.J. — Phillip Marshall appeals his convictions for felony harassment and third degree malicious mischief. He contends that the evidence was insufficient to support his harassment conviction and that the trial court erred in admitting ER 404(b) and hearsay evidence. We disagree and affirm.

FACTS

Marshall and E.L. were in an "up and down" intimate relationship for nearly two years. E.L. ended the relationship in September 2019 following a fight in which Marshall blackened her eye and choked her to the point where she could not breathe.

In the middle of the night on September 19, about a week after the assault, Marshall persuaded E.L. to return to the tent where he lived in some woods near Bellingham. He did so by telling E.L. that he wanted to make amends and "prove his

love" to her.  But as soon as they entered the tent, Marshall's demeanor changed.  He went from being apologetic to accusatory and demeaning.

After arguing with Marshall for several hours, E.L. insisted on leaving the tent because she "was afraid that [she] would end up getting injured if [she] stayed." Marshall stood in her way and blocked the exit.  When she tried to walk by Marshall, he yanked the bag E.L. was carrying off of her arm, dumped its contents, stomped on them, and cracked the screen of her cell phone.  E.L. tried to gather her things and collect the bag because that was her "last chance to get help if [she] needed it," but as she did so, Marshall pressed his forehead against hers and angrily said: "You know I could kill you right now?  You know that, don't you?" or "I could just kill you right fucking here, and nobody would even care."

At that moment, E.L. believed that Marshall "was very capable of" killing her and did not "know what he might do."  Also, "[b]ecause of the week before, [E.L.] was scared," "afraid that he was going to hit [her] again if [she] didn't get out of there before it got worse," and "afraid he would hurt [her]" again.  So she ran "as quickly as" she could out of the tent.

Marshall tried to coax E.L. back by offering to return her phone but she refused. He then threw the phone at her and went back inside the tent.  E.L. retrieved the phone and, "[b]efore it was a minute in [her] hands," she called 911 while walking to a nearby Olive Garden restaurant to wait for a police officer.

Whatcom County 911 operator Midnightblue Danskine received E.L.'s "domestic violence call" around 10:00 a.m. on September 19.  According to Danskine, E.L. "was crying and speaking very quickly and having a hard time fully getting her words out.

- 2 -

She sounded as if she was hyperventilating or having difficulty getting air." E.L. reported being in a fight with her boyfriend, whom she identified as Phillip Marshall. She also reported being scared of Marshall, how "he might have a knife and an air soft gun," and that "she was leaving the woods to get away from him."

Bellingham Police Officer Tyler Reed responded to the 911 call and interviewed E.L. He described E.L. as being "visibly upset," "crying," "distraught," and "emotional." This conversation was recorded on Officer Reed's body-worn camera.

The State charged Marshall with one count of felony harassment and one count of third degree malicious mischief, both with domestic violence aggravators.

At the bench trial, the State introduced evidence of Marshall's prior incident of domestic abuse. E.L. testified about Marshall's threat on September 19 and a prior time when he strangled and blackened her eye. The earlier altercation involved "15 minutes of wrestling around" until she could not "fight back anymore." The State called Danskine to testify about the 911 call and Officer Reed to discuss his encounter with E.L. Officer Reed described the location of Marshall's tent as not an "easily publicly accessible space," and "pretty well hidden up in the woods." The State also presented the officer's body-worn camera recording, which the trial court admitted.

Marshall did not testify and rested without calling any witnesses. The trial court found him guilty as charged. Marshall appeals.

## ANALYSIS

A. Sufficiency of Evidence

Marshall argues that the State failed to provide sufficient evidence that he made a true threat to kill E.L. We disagree.

In reviewing a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We review circumstantial evidence and direct evidence with equal weight. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). And we defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

In harassment cases, we apply "the rule of independent review" to determine what constitutes a true threat. State v. Kilburn, 151 Wn.2d 36, 52, 84 P.3d 1215 (2004). The purpose on independent review is to ensure that "the judgment does not constitute a forbidden intrusion on the field of free expression." Kilburn, 151 Wn.2d at 50. Thus, independent review is "limited to review of those 'crucial facts' that necessarily involve the legal determination" of whether there was a true threat and "does not extend to factual determinations such as witness credibility." Kilburn, 151 Wn.2d at 52; State v. Johnston, 156 Wn.2d 355, 365-66, 127 P.3d 707 (2006).

To convict Marshall of felony harassment, the State had the burden of establishing that he knowingly threatened to kill and, by words or conduct, placed E.L. in reasonable fear that the threat would be carried out. RCW 9A.46.020(1), (2)(b)(ii). Because RCW 9A.46.020 criminalizes pure speech, the State must also prove that the

- 4 -

alleged threat was a "true threat." State v. Kohonen, 192 Wn. App. 567, 575, 370 P.3d 16 (2016). Whether a statement is a "true threat" is determined through an objective standard that focuses on the speaker. Kilburn, 151 Wn.2d at 44. "The question is whether a reasonable person in the speaker's position would foresee that the threat would be interpreted as a serious expression of intention to inflict the harm threatened." Kohonen, 192 Wn. App. at 575-76 (citing State v. Allen, 176 Wn.2d 611, 626, 294 P.3d 679 (2013)).

> A true threat is a serious threat, not one said in jest, idle talk, or political argument. Kilburn, 151 Wn.2d at 43 (citing United States v. Howell, 719 F.2d 1258, 1260 (5th Cir. 1983)). Stated another way, communications that "bear the wording of threats but which are in fact merely jokes, idle talk, or hyperbole" are not true threats. State v. Schaler, 169 Wn.2d 274, 283, 236 P.3d 858 (2010). The nature of a threat "depends on all the facts and circumstances, and it is not proper to limit the inquiry to a literal translation of the words spoken." State v. C.G., 150 Wn.2d 604, 611, 80 P.3d 594 (2003) . . . Consistently with this recognition, our court has held that "[w]hether a statement is a true threat or a joke is determined in light of the entire context" and that a person can indirectly threaten to harm or kill another. Kilburn, 151 Wn.2d at 46, 48. Further, "[t]he speaker of a 'true threat' need not actually intend to carry it out. It is enough that a reasonable speaker would foresee that the threat would be considered serious." Schaler, 169 Wn.2d at 283 (citation omitted).

Kohonen, 192 Wn. App. at 576-77 (alterations in original) (quoting State v. Locke, 175 Wn. App. 779, 790, 307 P.3d 771 (2013)).

Thus, the dispositive question is not whether the evidence establishes that Marshall intended to kill E.L., but whether sufficient evidence establishes that a reasonable person in Marshall's position would have foreseen that his statements would be interpreted as a serious expression of an intent to inflict the harm threatened. Given the facts here, we conclude that such evidence was adduced.

A week before September 19, 2019, Marshall blackened E.L.'s eye and strangled her to the point that she could no longer breathe. E.L. terminated the relationship and Marshall later lured her to his tent that was "pretty well hidden up in the woods" under the guise of reconciliation. Once inside the tent, Marshall immediately became combative and engaged in a lengthy argument. A frightened E.L. tried to leave the tent but Marshall blocked her and tried to destroy her only means of calling for help. When she tried to gather her things, Marshall put his forehead to E.L.'s and angrily said he "could kill her" right there. He made these statements in the midst of a heated argument, and after preventing E.L. from leaving and physically assaulting her a week before. He did not make these statements in jest or idle chat. E.L. believed he was capable of killing her and was afraid that he would hurt her again.

Viewing these facts in a light most favorable to the State, sufficient evidence supported the trial court's determination that Marshall made a true threat to kill.

B. Prior Domestic Violence

Marshall next contends that the trial court erred by admitting ER 404(b) evidence of his prior physical altercation with E.L. to show her state of mind during the September 19 incident. We disagree.

Before trial, the State gave notice and moved to introduce evidence of Marshall's "previous violent altercations" with E.L., specifically the one involving "strangulation and punching [E.L.] in the eye, a week prior to this incident." It argued that the prior act of violence against E.L. was relevant to prove her state of mind for the purposes of determining "whether her apprehension and fear that the threat would be carried out was objectively reasonable." Marshall opposed the motion. The trial court considered

the parties' arguments but determined that it needed to hear E.L.'s testimony before it could rule on whether the prior bad act evidence was admissible. After E.L. testified, the trial court found that the prior incident was admissible for the limited purpose of showing E.L.'s state of mind and determining whether her fear was reasonable. We review a trial court's decision to admit or exclude evidence under ER 404(b) for abuse of discretion. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Powell, 126 Wn.2d at 258.

Under ER 404(a), evidence of a person's character is not admissible when it is offered "for the purpose of proving action in conformity therewith on a particular occasion." The same evidence, however, may be admitted for proper purposes that include "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b); State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Prior acts of violence are admissible under ER 404(b) when they are relevant to prove an element of the crime. State v. Ashley, 186 Wn.2d 32, 41, 375 P.3d 673 (2016).

Here, to prove felony harassment, the State had to establish that Marshall's threat placed E.L. "in reasonable fear that the threat will be carried out." RCW 9A.46.020(1)(b). The State introduced ER 404(b) evidence of a prior act of domestic abuse between Marshall and E.L. to establish that her fear of his threat was reasonable. The trial court ruled that this evidence was admissible for this purpose. The trial court did not abuse its discretion in doing so because state of mind evidence in domestic violence harassment cases is relevant and admissible. State v. Fisher, 165 Wn.2d 727,

744, 202 P.3d 397 (2009) ("Washington courts have recognized that evidence of misconduct is admissible to prove the alleged victim's state of mind.").

Marshall also mistakenly relies on State v. Gunderson, 181 Wn.2d 916, 337 P.3d 1090 (2014). There, the trial court admitted evidence of the defendant's prior acts of domestic violence against the alleged victim to impeach the credibility of the alleged victim's testimony that he did not assault her. Gunderson, 181 Wn.2d at 920-21. On review, the Gunderson court held that the trial court erred in admitting the evidence. 181 Wn.2d at 919-20. Here, the ER 404(b) evidence was relevant to proving an element of felony harassment. And, unlike Gunderson, the evidence was not admitted to bolster E.L.'s credibility.

## C. The 911 Call

Marshall claims that the trial court erred when it admitted statements E.L. made to the 911 operator because they did not qualify under the excited utterance exception to the hearsay rule. We review a trial court's decision to admit a hearsay statement under the excited utterance exception for an abuse of discretion. State v. Young, 160 Wn.2d 799, 806, 161 P.3d 967 (2007).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Generally, hearsay is inadmissible. ER 802. Under ER 803(a)(2), however, a hearsay statement is admissible as an excited utterance if it is a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "A statement qualifies as an excited utterance if (1) a startling event occurred, (2) the declarant made the statement while under the stress or

excitement of the event, and (3) the statement relates to the event." State v. Magers, 164 Wn.2d 174, 187-88, 189 P.3d 126 (2008).

Marshall challenges only the second factor, arguing that the State failed to establish that E.L. "was still under the influence of the event or that so little time had passed that [E.L.] did not have time to reflect on what she would say to the 911 operator." Although the record does not reveal the exact time E.L. exited the tent, it does establish that E.L. called 911 within a minute of retrieving her phone and while still in the process of escaping from Marshall. In view of these circumstances, it is apparent that the passage of time between Marshall's threat and E.L.'s 911 call was brief and E.L. was still under the stress of the incident.

We thus conclude that the trial court acted within its discretion in admitting E.L.'s statements as excited utterances. Marshall's claim of error fails.

D. Body-Worn Camera

Finally, Marshall contends that the trial court erred when it admitted the body-worn camera recording. After reviewing the recording in chambers, the trial court determined that E.L.'s statements to Officer Reed were excited utterances.[1] But Marshall has not designated this recording as part of the appellate record and we have no means of reviewing the evidence the trial court considered in making its ruling. As the party seeking review, Marshall bears the burden of perfecting the record to provide us with all the relevant evidence. RAP 9.1(a), 9.6(a), (b)(3); State v. Vazquez, 66 Wn. App. 573, 583, 832 P.2d 883 (1992). His failure to do so precludes review of this issue.

---

[1] The record shows that audio difficulties hindered playing the recording in the courtroom. Because the parties had viewed the recording, they did not object to the trial court viewing it in chambers and later discussing its admissibility with them on the record.

We affirm.[2]

_____
Mann, C.J.

WE CONCUR:

_____          _____
Dwyer, J.

---

[2] Although Marshall assigns error to several findings of fact by the trial court in his briefing, he provides no argument or authority on why such findings were improper. Thus, these assignments of error are waived and we will not consider them. RAP 10.3(6); State v. Thomas, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004).