[No. 2383-1.    Division One.    June 17, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. LESLIE B. RIGGINS, *Appellant.*

*Kessler, Tegland & Urmston* and *Keith L. Kessler* and *Randolph W. Urmston,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Douglas B. Whalley, Deputy,* for respondent.

FARRIS, J.—Following a trial by jury, Leslie B. Riggins was found guilty of two counts of violating the Uniform Controlled Substances Act (RCW 69.50). He appeals from judgment entered on the jury verdict. We affirm.

The primary question on appeal is whether the trial court abused its discretion in failing to compel the State to identify and produce an informer who was a witness to both alleged transactions.

Governmental bodies have been accorded a privilege to withhold the identity of an "informant" but the privilege is not absolute.

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

. . . .

. . . The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

(Footnote omitted.) *Roviaro v. United States,* 353 U.S. 53, 60, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957).

Here the testimony of Officer Marcus, the chief witness

for the State, if believed, established that he was introduced to Riggins on December 25, 1972, in room 105 of the Virginius Hotel by a male companion. Marcus had a discussion with Riggins as to the purchase of drugs and provided Riggins with $25 for that purpose. Pursuant to this agreement, Marcus and his male companion subsequently met Riggins who was accompanied by his wife, Judy, in room 105 and Riggins transferred drugs to Marcus in the presence of his companion. A second meeting took place between Marcus and Riggins on December 26, 1972. At the second meeting, Marcus was also accompanied by a male and female companion and Riggins transferred drugs to Marcus.

On cross-examination of Marcus, Riggins asked questions to elicit the names of the female and male companions. The State's objections to the inquiry were sustained.

All witnesses for the State had been certified prior to trial. No request for the identity or the production of witnesses was made prior to trial but Riggins explains this failure by asserting his innocence and his consequential ignorance of the State's case against him. At this point in the proceedings, there was at least a question of whether Riggins could satisfy the requirement of *Roviaro* for disclosure. The required procedure for compelling disclosure is to make a showing that the identity of the nondisclosed witness is relevant and helpful to the defense or essential to a fair determination of the cause. *State v. Driscoll,* 61 Wn.2d 533, 379 P.2d 206 (1963). The record reflects no affidavit or offer of proof in this regard but we need not determine whether this defect was fatal.

Riggins took the stand in his defense and testified that he remembered the male and female companions of Officer Marcus and that the male's first name was "Tom" and that the female companion was Tom's wife, but he did not remember Tom's last name or his wife's name; that he had loaned Tom money on more than one occasion and "Tom was a friend of mine." He testified that he had been at Tom's residence at the hotel on several occasions and on

452

one occasion stayed there "quite sometime" and that he had known Tom and his wife for at least 30 days prior to the alleged offense.

■ This testimony, if believed, establishes that Riggins knew the identity of the eyewitness (informer) but he did not know his name or his role in the matter. The precise question here was before the court in *People v. Jarrett*, 57 Ill. App. 2d 169, 181, 206 N.E.2d 835 (1965):

> The facts in the case before us clearly establish that defendant had a personal acquaintanceship with the informer prior to the offenses charged herein. Through her cross-examination of officer Phelps it was first brought out that the informer was called "Red" and was employed by the well known detective agency. Although the defendant was arrested on September 12, 1963, and went to trial on December 20, 1963, no effort was made by her to discover any further information regarding "Red" or his whereabouts nor did she attempt to subpoena him.

*See also United States v. Weinberg*, 478 F.2d 1351 (3d Cir. 1973); *United States v. Casiano*, 440 F.2d 1203 (2d Cir. 1971); *Churder v. United States*, 387 F.2d 825 (8th Cir. 1968); *People v. Bliss*, 44 Ill. 2d 363, 255 N.E.2d 405 (1970). The trial court did not abuse its discretion in denying the motion.

We do not ignore the decision of this court in *State v. McCoy*, 10 Wn. App. 807, 521 P.2d 49 (1974). There the State waived the privilege by inquiring into the substance of the unidentified informer's information. Here nothing presented by the State crossed the constitutional boundary. Nothing of the informer's communications to the officer was introduced into evidence.

■ It was not error to fail to give Riggins' proposed instruction on the "presumption of unfavorable testimony by an uncalled witness":

> You are instructed that in a criminal case, the failure of one party to call a witness peculiarly available to that party who has evidence which is material and important, raises the inference that the testimony of that witness, if he were called, would have been unfavorable to that party failing to call him.

An unfavorable inference does not arise from the State's failure to call a confidential informant witness. To rule otherwise would defeat the public policy of protecting the informant and encouraging such people to cooperate with police authorities.

■ Error is also assigned to the admission of exhibit No. 3 (the vial which contained the controlled substance) into evidence since no proper and continuing chain of custody was established. Officer Marcus testified that he inscribed his initials on the bottle and on voir dire examination the initials were not discoverable. We agree with the trial court that other identifying circumstances relegated that defect to the weight, not the admissibility of the exhibit. The officer identified the bottle and it remained in his presence until he placed it in the police department property room.

■ Instruction No. 7 was not a comment on the evidence:

> You are instructed that under the laws of the state of Washington, pentobarbital and secobarbital are derivatives of barbituric acid, and are controlled substances.

Riggins argues that since pentobarbital and secobarbital are not included within the substances specifically set out by name in RCW 69.50 as controlled substances, they are not in fact controlled substances as stated in instruction No. 7. We reject this argument since Schedule 3 of the Uniform Controlled Substances Act (RCW 69.50.208(c)(1)) provides that any substance which contains any quantity of a derivative of barbituric acid is a controlled substance. The instruction was a correct statement of the law.

Affirmed.

HOROWITZ and JAMES, JJ., concur.

Petition for rehearing denied September 26, 1974.

Review denied by Supreme Court November 4, 1974.