[No. 15543-5-II.   Division Two.   April 19, 1994.]

THE STATE OF WASHINGTON, *Appellant*, v. THERON L. PETRINA, *Respondent*.

*H. Steward Menefee, Prosecuting Attorney,* and *David B. Trefry, Deputy,* for appellant.

*John Farra,* for respondent (appointed counsel for appeal).

SEINFELD, J. — The Grays Harbor County Superior Court ordered the State to disclose the identity of a confidential informant in the criminal case against Theron L. Petrina. It did so without first holding an in camera hearing. After the State refused to disclose, the trial court dismissed the prosecution. The State appeals; we affirm.

On March 29, 1991, an anonymous informant phoned the Grays Harbor County Drug Task Force, wishing to provide information on Tony Petrina's marijuana trafficking operations. Tony Petrina is the son of Respondent, Theron L.

Petrina.[1] The informant wished to remain anonymous because he or she feared reprisals from Tony Petrina, his family, or his associates. Task force detective Michael Haymon met with the informant that same day. The informant related information about Tony Petrina's illegal activities, associates, and frequented places.

Still on March 29, 1991, Haymon sought a warrant to search (1) Tony Petrina; (2) Tony Petrina's Aberdeen apartment; (3) Theron Petrina's Aberdeen house; and (4) Tony Petrina's pickup truck. In his affidavit supporting issuance of the search warrant, Haymon relayed the statements of the informant. In part, Haymon's affidavit states

> the informant explained to me that within the last twenty-four (24) hours, he/she had personally observed Tony Petrina and a mexican male known by the name of "George" . . . arrive at . . . the residence of Theron Petrina, Tony Petrina's father. At that time Tony Petrina was in possession of five large ziplock baggies which appeared to contain approximately one pound of marihuana each. The citizen informant observed [Tony] Petrina store the marihuana in a safe located in the basement of the residence. [Tony] Petrina then left the residence leaving the marihuana in the safe. As well as the marihuana, the citizen informant has observed weighing scales and other paraphernalia stored at the residence, in the basement, which is being used by [Tony] Petrina to "break down" pounds of marihuana into saleable portions consisting of ounces, $1/4$ ounces, $1/2$ ounces and full ounces. The informant related that Theron Petrina, the father of Tony Petrina, . . . has full knowledge of the marihuana distribution activities of his son that are taking place from inside his residence.

Later in the affidavit, Haymon states as follows:

> The informant explained that [Tony] Petrina normally stores his marihuana in bulk at his father's residence. This explanation made it apparent to me through my training and experience that Tony Petrina was using [Theron Petrina's house] as a "safe house".

The informant had smoked marijuana and knew the typical methods of packaging and selling marijuana. He or she had intimate knowledge of Tony Petrina's illegal operations. In addition, the informant had a criminal record.

---

[1]Tony Petrina was 34 years old at this time.

A judge issued the warrant. Officers executing the warrant searched Theron Petrina's house shortly after midnight on March 30, 1991. They seized a 1-gallon plastic bag containing approximately 16 ounces of pressed marijuana, found in the ceiling of the basement. Below the hole in the ceiling was a sink containing a small amount of marijuana and a cupboard containing a set of scales, four open boxes of plastic bags and one closed box, and a beer can fashioned into a smoking device. The officers also seized an extensive gun collection and CB radios, among other items.

A narcotics dog "alerted" on the basement safe described by the informant. Theron Petrina's girlfriend (now wife) opened the combination safe, and the officers present could smell the odor of marijuana, although the safe apparently contained no drugs.

On August 23, 1991, the State charged Theron Petrina with possession of marijuana with intent to deliver (RCW 69.50.401(a)). Petrina,[2] claiming lack of knowledge of the marijuana, moved for the disclosure of the identity of the informant. The State opposed the motion claiming that disclosure would not help the defense, and that the State did not intend to present the informant's information at trial. The State requested, in the alternative, that the court examine the informant in an in camera hearing before making its decision regarding disclosure. The trial court declined to hold an in camera hearing and ordered disclosure. When the State refused to comply with the disclosure order, the trial court dismissed the charges. The State then filed this appeal.

ANALYSIS

We review the trial court's decision to order or to refuse to order disclosure of an informant's identity for abuse of discretion. *State v. Uhthoff*, 45 Wn. App. 261, 268, 724 P.2d 1103, *review denied*, 107 Wn.2d 1017 (1986); *see State v. Harris*, 91 Wn.2d 145, 152, 588 P.2d 720 (1978); *State v.*

___

[2]In the remainder of this opinion, we will refer to "Theron Petrina" as "Petrina" and to "Tony Petrina" as "Tony".

*Bailey*, 41 Wn. App. 724, 729, 706 P.2d 229 (1985). We also review for abuse of discretion the trial court's decision whether or not to hold an in camera hearing. *State v. Vazquez*, 66 Wn. App. 573, 582, 832 P.2d 883 (1992). A trial court abuses its discretion when it acts on untenable grounds or for untenable reasons or when its decision is manifestly unreasonable. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

In general, the government is privileged to refuse to disclose the identity of informants who provide information of criminal violations. *Roviaro v. United States*, 353 U.S. 53, 59, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957); *accord Harris*, 91 Wn.2d at 148. The purpose of the "informer's privilege" is to further effective law enforcement and to encourage citizens to report their knowledge of criminal activities. *Roviaro*, 353 U.S. at 59; *accord Harris*, 91 Wn.2d at 148. In Washington, the privilege is codified at CrR 4.7(f)(2) and RCW 5.60.060(5).[3]

 ▪ However, a defendant's request for disclosure raises constitutional issues of fundamental fairness and due process. *United States v. Raddatz*, 447 U.S. 667, 679, 65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980); *State v. Vargas*, 58 Wn. App. 391, 394, 793 P.2d 455 (1990); *Uhthoff*, 45 Wn. App. at 268; *State v. Allen*, 27 Wn. App. 41, 43-46, 615 P.2d 526, *review denied*, 94 Wn.2d 1025 (1980); *see Harris*, 91 Wn.2d at 149; CrR 4.7(f)(2). "[T]he fundamental requirements of fairness" limit the government's privilege. *Roviaro*, 353 U.S. at 60; *accord Harris*, 91 Wn.2d at 149. When "disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60-

---

[3]CrR 4.7(f)(2) provides (in part) as follows:

"Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant."

RCW 5.60.060(5) provides as follows:

"A public officer shall not be examined as a witness as to communications made to him or her in official confidence, when the public interest would suffer by the disclosure."

61; *accord Harris*, 91 Wn.2d at 148. The trial court then may order disclosure and dismiss the action if the State refuses to disclose. *Roviaro*, 353 U.S. at 61.

In addition, a defendant has a Sixth Amendment right to compel attendance of witnesses who could materially aid his defense. *State v. Smith*, 101 Wn.2d 36, 41-42, 677 P.2d 100 (1984). If a defendant establishes "a colorable need for the person to be summoned", then the person is a material witness whose identity the State must disclose to allow the defendant to compel attendance. *See Smith*, 101 Wn.2d at 41-42; *see also State v. Casal*, 103 Wn.2d 812, 816, 699 P.2d 1234 (1985). *But see Harris*, 91 Wn.2d at 151.

In each case, the trial court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense."[4] *Roviaro*, 353 U.S. at 62; *accord Harris*, 91 Wn.2d at 150. When it weighs these interests, the trial court must consider the facts of the case before it: "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62; *accord Harris*, 91 Wn.2d at 150. The burden is on the defendant to overcome the privilege by showing that the above standards require disclosure. *State v. Massey*, 68 Wn.2d 88, 92, 411 P.2d 422, *cert. denied*, 385 U.S. 904 (1966). Some appellate courts hold that a defendant can overcome the privilege by showing that the informant is a material witness as to guilt or innocence, *e.g.*, *Casal*, 103 Wn.2d at 816; *State v. Redd*, 51 Wn. App. 597, 606, 754 P.2d 1041, *review denied*, 111 Wn.2d 1008 (1988), or a material witness relevant and helpful to the defense, *e.g.*, *Vazquez*, 66 Wn. App. at 581, 583-84.

The *Harris* court also held that if it is clear to the trial court "in the first instance" that the defense has established either prong of the *Roviaro* standard (relevant and helpful to the defense or essential to a fair determination), fundamental fairness requires disclosure. 91 Wn.2d at 149.

---

[4]However, as noted above, a defendant has a Sixth Amendment right to compel attendance of a witness whose testimony would materially aid the defense. *Smith*, 101 Wn.2d at 41-42.

Failure to disclose when the defendant has established either *Roviaro* prong would prejudice the defendant, even if the trial court "believes the testimony could not benefit the accused. . . . [I]t does not matter whether the testimony of the informer would support the accused or not." *Harris*, 91 Wn.2d at 149. In such a situation, the accused decides how to use or whether to use the disclosed information. 91 Wn.2d at 149. The trial court cannot substitute its judgment for the defendant's as to the benefit of the testimony, or for the jury as to reliability of the testimony. *Harris*, 91 Wn.2d at 149-50.

Petrina argued the informant was the only available witness to testify that someone else put the marijuana in Petrina's house. He also sought disclosure to discover exactly when the informant saw Tony put the marijuana in the basement, the nature of the activities observed by the informant inside Petrina's house, and the names of other people present at the time of these activities. He stated he would present testimony to show that the scales and plastic bags were somehow connected to his gun collection.

The trial court concluded that the informant's testimony was essential to determination of Petrina's prosecution under the above *Harris* language. We agree. The informant observed a third party place the marijuana in Petrina's house. The informant also claimed knowledge of Petrina's state of mind. The informant's testimony is essential to the determination of guilt or innocence; it is clear "in the first instance" that fundamental fairness mandates disclosure of the informant's identity. *See Harris*, 91 Wn.2d at 149-50.

Furthermore, the factors identified in *Roviaro* and *Harris* also support disclosure. The State charged Petrina with possession with intent to deliver. His primary defense was lack of knowledge. To convict, the State would have had to prove that Petrina intended to deliver marijuana; Petrina cannot intend to deliver marijuana without knowledge of the marijuana. *See State v. Sims*, 119 Wn.2d 138, 142, 829 P.2d 1075 (1992). The significance of the informant's testimony is clear: as the trial court noted, the "informant apparently

observed the defendant's son with the very same marijuana for which the defendant is being prosecuted."[5]

■ Petrina planned to introduce the search warrant affidavit at trial and could cross-examine the officers involved; arguably, the informant's testimony would be cumulative. *See Vargas*, 58 Wn. App. at 398. However, the United States Supreme Court's statement about the petitioner in *Roviaro* applies equally to Petrina; the informant was Petrina's

> one material witness. Petitioner's opportunity to cross-examine [officers] was hardly a substitute for an opportunity to examine the man who . . . took part in the transaction. . . . He was the only witness who might have testified to petitioner's possible lack of knowledge . . .. The desirability of calling [the informant] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.

353 U.S. at 64. The informant also had personal knowledge of activities in the house after Tony placed the marijuana there, of who else was present, and of when this occurred. The informant apparently did not share this information with the police, and it does not appear in the affidavit.

The need to develop a defense, along with weaknesses in the State's case, also supports the trial court's disclosure order. *See Vargas*, 58 Wn. App. at 396-97. When the informant is an eyewitness or participant in the crime the argument for disclosure is most compelling. *Vazquez*, 66 Wn. App. at 581. "The case for disclosure is much stronger when it appears likely that identifying the informant will be helpful in the determination of guilt or innocence." *State v. Harris*, 44 Wn. App. 401, 405, 722 P.2d 867 (1986).

Here, the State informed the trial court it intended to prove the case based on the items seized and the testimony of the officers; it did not intend to introduce the information contained in the search warrant affidavit. This evidence, alone, would suggest that Petrina himself was dividing and selling the marijuana, contrary to the version of events the

---

[5]The State must prove Petrina's intent to deliver as to the marijuana he is charged with possessing. *See State v. Robbins*, 68 Wn. App. 873, 876, 846 P.2d 585 (1993).

State used to obtain the warrant. Again, the informant's testimony is critical to a determination of guilt or innocence.

Given the facts of this case, fundamental fairness required disclosure. The trial court did not abuse its discretion in so ordering.

The State also argues that the trial court abused its discretion by failing to hold an in camera hearing before ordering disclosure. *Roviaro* does not require the trial court to engage in any particular procedure before ruling on a disclosure motion. In *Harris*, the Washington Supreme Court declared "[t]he *preferred* method for making this determination . . . is for the court to hold an in camera session [pursuant to CrR 4.7(h)(6)] at which the judge hears the informer's testimony and applies the *Roviaro* standard." (Italics ours.) 91 Wn.2d at 150. The trial court may need the information obtainable during an in camera hearing to balance properly the benefit to the defendant of disclosure against the public interest in nondisclosure. *Harris*, 91 Wn.2d at 151.

Once a defendant makes a preliminary *Roviaro* showing, that is, when the defendant shows that a hearing would likely reveal the informant to have some evidence relevant to the defendant's innocence or essential to determination of the case, the trial court may not deny the motion for disclosure without an in camera hearing. *See Vargas*, 58 Wn. App. at 395; *Redd*, 51 Wn. App. at 606. To do so would be an abuse of discretion as it might violate the defendant's constitutional rights. *See, e.g., Raddatz*, 447 U.S. at 679; *Vargas*, 58 Wn. App. at 394; *Uhthoff*, 45 Wn. App. at 268; *Allen*, 27 Wn. App. at 48.

Here, the State argues the converse: that the trial court must hold an in camera hearing before granting a motion for disclosure. The State acknowledges that, unlike the defendant, it has no constitutional rights at stake. The privilege the State seeks to protect is based on court rule and statute.

■ The State's request for an in camera hearing is not simply the mirror image of a defendant's request for a hearing. Because of the different rights at stake, the authority cited by the State governing denial of disclosure is not controlling. In fact, we are not aware of any authority that requires a trial court to hold an in camera hearing before ordering disclosure of a confidential informant.

An in camera hearing provides the trial court with the opportunity to determine the nature and extent of benefit to the defendant from disclosure. It is desirable and proper to hold such a hearing before ordering or denying disclosure. However, when it is apparent that the informant's testimony is necessary to determine guilt or innocence or will materially assist the defense, it is not reversible error to fail to hold a hearing. Here, the trial court could determine from the search warrant affidavit that the informant was a necessary witness. It did not need the information it might obtain at an in camera hearing to make this determination. Under *Harris* and *Roviaro*,[6] the trial court properly ordered disclosure as a matter of fundamental fairness. In doing so, it did not abuse its discretion.

Affirmed.

MORGAN, C.J., and HOUGHTON, J., concur.

---

[6]The Court in *Roviaro* required disclosure without the benefit of a hearing. 353 U.S. at 65. The *Harris* court declared that when "disclosure is required in the first instance", the trial court cannot "substitute its own judgment regarding the potential benefit of the informer's testimony for that of the defendant". 91 Wn.2d at 149.