FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 8: 53

STATE OF WASHINGTON

BY No. 44801-7-II
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44801-7-II |
| Respondent, | |
| v. | |
| SEAN ALLEN FORSMAN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Sean Forsman challenges his jury convictions on three counts of unlawful delivery of a controlled substance, with two school zone enhancements. Forsman argues that the trial court abused its discretion when it declined to order disclosure of the identity of the State's confidential informant (CI) or to hold an in camera interview of the CI to determine whether ordering disclosure would be proper. In his statement of additional grounds (SAG), Forsman further asserts that the trial court erroneously quashed his subpoena for Officer Jeffrey Martin's arrest or incident reports; the trial court improperly admitted evidence from a measurement device without a showing of authentication or reliability; the State improperly bolstered the CI's credibility; the trial court erroneously instructed the jury that it had to vote unanimously to reject the aggravating circumstance; the trial court erroneously instructed the jury on the definition of "delivery"; the prosecutor committed misconduct by shifting the burden of proof to Forsman; and, the trial court improperly denied Forsman's motion to dismiss. We reject all of Forsman's claims and affirm the trial court.

## FACTS

This case concerns a CI who has worked for the police since 2006 and has participated in over 24 controlled drug buys. The State never called or intended to call the CI as a witness.

Forsman believed the CI to be his friend Marie.[1] However, the State has never confirmed the CI's true identity.

The CI approached Officer Jeffrey Martin and offered to buy controlled substances from Forsman. On three occasions, the CI bought crack cocaine from Forsman. All three transactions followed the same procedure. Prior to meeting Forsman, the police searched the CI to insure she did not possess any drugs or contraband. Each time, the CI wore sweatpants, a T-shirt, no bra, and flip-flops or flat shoes. This attire facilitated the search and made it clear she was taking no contraband with her into the meeting with Forsman.

Each time, the police gave the CI money. The CI would then meet with Forsman inside her car. The police monitored the transactions, but could not actually see anything being exchanged. After each of the three transactions with Forsman, the CI returned with crack cocaine and without the money.

Martin used a school district map of bus stops and a laser measurement device to determine that the second and third drug buys took place less than 1,000 feet away from a school bus stop. A Tacoma school district official testified and corroborated Martin's findings. .

---

[1]  Q. I will ask you did you know this individual—
A. Yes.
Q. —that you met with?
A. Yes, I did. I am familiar with the CI, familiar who she is . . . Marie, is her name.

Report of Proceedings (RP) (Apr. 1, 2013) at 457.

## PROCEDURAL HISTORY

The State charged Forsman with three counts of unlawful delivery of a controlled substance,[2] two of which carried school zone enhancements.[3] Forsman moved to compel the State to disclose the CI's identity and contact information. In support of his motion, Forsman argued that the CI was a material witness because she was the only eyewitness to the actual transaction and, other than the police, only she could testify to the extent of the pre-buy searches the police conducted of her person. In a pretrial hearing, the trial court granted the motion only as to the CI's gender. The State also disclosed that the CI had previously been convicted of a crime of dishonesty. .

Forsman orally re-raised the CI issue at a confession hearing held pursuant to CrR 3.5. Relying on the same arguments he had raised previously, Forsman requested an in camera proceeding to determine whether the CI had any exculpatory information. The trial court denied the motion.

Shortly before trial, Forsman once again requested disclosure of the CI's identity, as well as any potential impeachment evidence. Forsman argued that his defense theory required "all evidence which would permit a reasonable inference . . . that the drugs in question in this case were not delivered to the CI by Forsman." Clerk's Papers (CP) at 104. The trial court denied the motion because the CI was not being called as a witness and was not subject to impeachment.

At trial, Forsman theorized that the CI was his friend Marie. He testified that he had not sold her drugs and that Marie met with him to borrow money. The CI did not testify at trial. None

---

[2] RCW 69.50.401(1)(2)(a)-(d).

[3] RCW 69.50.435; RCW 9.94A.533(6).

of her statements to Forsman or the police were offered or used. The State did not want to jeopardize the CI or her cases.

The jury returned verdicts of guilty on all three counts and found the State proved the school zone enhancements. Forsman unsuccessfully moved to have the jury verdict set aside because he was unable to confront the CI. He timely appealed.

ANALYSIS

I.    STANDARD OF REVIEW

The trial court's decision whether to disclose an informer's identity is reviewed for abuse of discretion. *State v. Harris*, 91 Wn.2d 145, 152, 588 P.2d 720 (1978). Similarly, the trial court's decision whether to hold an in camera hearing is reviewed for abuse of discretion. *State v. Vazquez*, 66 Wn. App. 573, 582, 832 P.2d 883 (1992). A trial court abuses its discretion if the decision is manifestly unreasonable, based on untenable grounds, or based on untenable reasons. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 136 (1997)).

II.    DISCLOSURE MOTION

Forsman argues that the trial court abused its discretion by refusing to order the disclosure of the CI's identity. The State argues that the trial court did not abuse its discretion because Forsman failed to show that the CI's testimony was either relevant and helpful to Forsman's defense, or essential to a fair determination. We agree with the State and affirm the trial court.

In general, the government is privileged to refuse to disclose the identity of informants who provide information of criminal violations. *State v. Petrina*, 73 Wn. App. 779, 783, 871 P.2d 637 (1994) (citing *Roviaro v. United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957)).

"Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant." CrR 4.7(f)(2). However, the informer's privilege is limited by a defendant's right to due process and a fair trial. "When 'disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.'" *Petrina*, 73 Wn. App. at 783-84 (quoting *Roviaro*, 353 U.S. at 60-61). Furthermore, a defendant has a Sixth Amendment right to compel attendance of material witnesses, so long as the defendant can establish "'a colorable need for the person to be summoned.'" *Petrina*, 73 Wn. App. at 784 (quoting *State v. Smith*, 101 Wn.2d 36, 41-42, 677 P.2d 100 (1984)).

In deciding whether to allow disclosure, the court must "balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" *State v. Harris*, 91 Wn.2d 145, 150, 588 P.2d 720 (1978) (quoting *Roviaro*, 353 U.S. at 62). In applying this test, the court must consider the facts of the particular case, including the crime(s) charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. *Harris*, 91 Wn.2d at 150 (citing *Roviaro*, 353 U.S. at 62). "[I]f the court determines that disclosure is relevant and helpful to the defense, or essential to a fair determination of the cause, the court may require disclosure." *Harris*, 91 Wn.2d at 150 (citing *Roviaro*, 353 U.S. at 60-61). The defendant bears the burden of showing that the above standards require disclosure. *Petrina*, 73 Wn. App. at 784 (citing *State v. Massey*, 68 Wn.2d 88, 92, 411 P.2d 422, *cert. denied*, 385 U.S. 904 (1966)).

In this case, the CI participated in the delivery of drugs. She arranged the deliveries with Forsman. Nobody else was present when they occurred. Therefore, she was the "only witness in a position to amplify or contradict the testimony of government witnesses." *Roviaro*, 353 U.S. at

5

64. But being a material witness "is not dispositive of the question whether the *Roviaro* standard requires disclosure." *Harris*, 91 Wn.2d at 151. The trial court must also consider the countervailing factors against disclosing the CI's identity. Here, the CI was engaged in active and ongoing investigations, which would be compromised if her identity were revealed. Furthermore, she had been involved in at least 24 investigations in the past. Revealing the CI's identity would potentially be a risk to her personal safety, not only from Forsman, but from any of the others she had previously helped the police investigate.

Another factor in favor of nondisclosure is that Forsman knew the identity of the CI to a reasonable degree of certainty. Although the State never confirmed the CI's identity, Forsman had an abiding belief that the CI was a friend of his:

> Q. I will ask you did you know this individual—
> A. Yes.
> Q. —that you met with?
> A. Yes, I did. I am familiar with the CI, familiar who she is. So December around the 7th, 10th, whatever, the CI, Marie, is her name, Marie contacted me.
> . . . .
> Q. How long have you known her approximately?
> A. Marie? Probably four years, five years, around there.
> Q. Is she someone that you were friends with or what?
> A. Yeah. She was someone that I was familiar with. I had a personal relationship with.

Report of Proceedings (RP) (Apr. 1, 2013) at 457-58. Where, as here, the defendant reasonably guessed the identity of the informant, knew her, and did not have any of her statements from the transactions introduced into evidence, the trial court does not abuse its discretion by refusing to disclose the informant's identity. *State v. Riggins*, 11 Wn. App. 449, 451-52, 523 P.2d 452 (1974). In addition, it must be noted that the defendant never subpoenaed his friend Marie to testify.

The trial court acted reasonably, for tenable reasons, and on tenable grounds. The particular facts of this case, along with the public policy for the informer's privilege, leads us to hold the court did not abuse its discretion. We affirm the trial court.

III.    IN CAMERA HEARING

Forsman raises the alternative argument that the trial court should have at a minimum held an in camera interview of the CI to determine whether she had any information that would be relevant or helpful to the defense. The State argues that Forsman failed to carry his burden to show the necessity of an in camera hearing, and accordingly the trial court did not abuse its discretion. We agree with the State and affirm the trial court.

CrR 4.7(h)(6) provides: "Upon request of any person, the court may permit any showing of cause for denial or regulation of disclosure, or portion of such showing, to be made in camera." Such an in camera hearing is the "preferred method" for determining whether disclosure of an informer's identity is necessary. *Harris*, 91 Wn.2d at 150. The court should hold an in camera hearing if the defendant can make an initial showing that the informant would have evidence relevant to the defendant's innocence. *State v. Potter*, 25 Wn. App. 624, 628, 611 P.2d 1282 (1980). Doubts should be resolved in favor of holding the hearing. *State v. Cleppe*, 96 Wn.2d 373, 382, 635 P.2d 435 (1981). However, the trial court may refuse to hold the hearing if the defendant's reason for seeking the informant's testimony is only speculative. *Potter*, 25 Wn. App. at 628; *Cleppe*, 96 Wn.2d at 382.

Here, Forsman's theory was that the CI's testimony might indicate that the pre-buy searches were not thorough, lending credence to Forsman's theory that the drugs had not come from Forsman but had been brought by the CI herself. This theory was entirely speculative. Forsman made no showing that would indicate that an in camera hearing might reveal evidence of

the CI's supposed plot to frame Forsman by planting drugs on herself. The trial court did not abuse its discretion by declining to credit Forsman's mere conjecture.

IV.    SAG ISSUES

A.    Subpoena for Officer Arrest/Incident Reports

Forsman argues that the trial court improperly granted the State's motion to quash a subpoena for the arrest and incident reports of Police Investigator Jeffrey Martin, a witness in Forsman's case. Forsman argues that the denial of access to these reports violated his confrontation clause rights. We reject his claim.

We review a trial court's evidentiary rulings for abuse of discretion. *State v. McDonald*, 138 Wn.2d 680, 693, 981 P.2d 443 (1999). Similarly, we review a trial court's ruling on the scope of cross-examination for abuse of discretion. *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002).

The confrontation clause of the Sixth Amendment guarantees a defendant the opportunity to confront the witnesses against him through cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). This includes the right to question a witness about potential bias. *Van Arsdall*, 475 U.S. at 678-79. However, trial judges have "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

Here, Forsman requested a list of all of the defendants Martin had arrested throughout his career for drug violations, and the race of each defendant. Forsman argued that this discovery was necessary because Martin may have been biased against Forsman because of his race. But Forsman

offered no specific reasons why Martin might be biased, other than the general assertion that "racial profiling is pervasive in society." RP (Sept. 25, 2012) at 5. Furthermore, even without the arrest records, Forsman was able to conduct a searching cross-examination of Martin at trial. In light of the burdensome nature of Forsman's request, and the lack of prejudice to Forsman's cross-examination, the trial court did not abuse its discretion by denying Forsman's discovery request.

B.      Measuring Device

Forsman argues that the trial court abused its discretion by allowing the State to introduce evidence of the results of a laser measuring device without a showing of authentication or reliability. We reject his claim.

Evidence must be authenticated before it is admitted. ER 901(a). However, the authentication requirement is waived when the opponent fails to object on authentication grounds. *State v. Roberts*, 73 Wn. App. 141, 145, 867 P.2d 697 (1994) (citing *Seattle v. Bryan*, 53 Wn.2d 321, 324, 333 P.2d 680 (1958); *State v. Trader*, 54 Wn. App. 479, 484-85, 774 P.2d 522 (1989); *State v. Hancock*, 44 Wn. App. 297, 303, 721 P.2d 1006 (1986); *United States v. Rivera-Cintron*, 29 M.J. 757, 759 (A.C.M.R. 1989); *Beckman v. Carson*, 372 N.W.2d 203, 209 (Iowa 1985)).

Here, Forsman did not object at trial to the introduction of the measuring device results. Accordingly, the requirement of authentication was waived and the trial court did not err by admitting the distance measurements. *Roberts,* 73 Wn. App. at 146 (citing 5 KARL TEGLAND, EVIDENCE § 10(1), at 25 (3d ed. 1989)). Forsman's claim fails.

C.      Bolstering

Forsman argues that the prosecutor improperly bolstered the credibility of the State's confidential informant. We reject his claim.

Here, Forsman failed to timely object to the prosecutor's alleged vouching. Accordingly, he can raise prosecutorial misconduct on appeal only if the alleged misconduct was so flagrant and ill-intentioned that no curative instruction could have mitigated the prejudice. *State v. O'Donnell*, 142 Wn. App. 314, 328, 174 P.3d 1205 (2007). A prosecutor improperly vouches for the credibility of a government witness when he either (1) "place[s] the prestige of the government behind the witness" or (2) "indicate[s] that information not presented to the jury supports the witness's testimony." *State v. Coleman*, 155 Wn. App. 951, 957, 231 P.3d 212 (2010) (citing *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980)).

Neither occurred in this case. The prosecutor merely rebutted the defense's theory that the CI brought her own drugs to the controlled buys in order to frame Forsman. In doing so, the prosecutor relied on facts that his evidence had established, such as Martin's search procedures, the fact that the CI was working extensively with the police, and the fact that the CI got along well with Forsman. The prosecutor also made the reasonable inference that if the CI was really smuggling drugs into her meetings with Forsman, the CI would expose herself to significant legal liability. The prosecutor's comments were not flagrant or ill-intentioned, and Forsman's claim fails.

D.      Unanimity

Forsman argues that the court erroneously instructed the jury that it had to be unanimous in order to reject the special finding that his drug sales occurred within 1,000 feet of a school bus stop. SAG at 4. We reject his claim.

Forsman's argument is foreclosed by our Supreme Court's decision in *State v. Nunez*, 174 Wn.2d 707, 715, 285 P.3d 21 (2012). There, our Supreme Court held that the Sentencing Reform act of 1981 requires unanimity for *any* verdict on aggravating circumstances, whether the jury

imposes or rejects an aggravator. *Nunez*, 174 Wn.2d at 715. The court correctly instructed the jury when it delivered the instruction that the jury must be unanimous to either accept or reject the alleged aggravators. Forsman's claim fails.

E.      Definition of Delivery

Forsman argues that the court improperly relieved the State of its burden to prove every element of the crime charged when it provided an erroneous definition of "delivery" in the jury instructions. SAG at 5. We reject his claim.

WPIC 50.07 defines "delivery" as "the [actual] [or] [constructive] [or] [attempted] transfer of a [controlled substance] [legend drug] from one person to another." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.07, at 960 (3rd ed. 2008). Here, the court instructed the jury that "delivery" means "the transfer of a controlled substance from one person to another." CP at 156. The court properly gave the delivery instruction as described in the WPIC, with the omission of the optional terms. But even if the delivery instruction was erroneous, any error did not relieve the prosecution of its burden to prove each element beyond a reasonable doubt. Rather, by specifying that transfer need not be actual, the omitted terms would have been *harmful* to Forsman's case. Because the court's delivery instruction did not relieve the prosecution of its burden, any error was harmless. *State v. Brown*, 147 Wn.2d 330, 340-41, 58 P.3d 889 (2002). Forsman's argument fails.

F.      Prosecutorial Burden-Shifting

Forsman argues that the prosecutor committed misconduct by shifting the burden of proof to him. We reject his claim.

Because Forsman failed to timely object to the prosecutor's closing argument, he can raise a claim of prosecutorial misconduct on appeal only if the alleged misconduct was so flagrant and

ill-intentioned that no curative instruction could have mitigated the prejudice. *O'Donnell*, 142 Wn. App. at 327-28.

Here, the prosecutor argued to the jury that

> If you think it's a real possibility that this defendant is the victim of a frame job, acquit him. If you think it's a real possibility that the police lied about his confession, acquit him. If you think it's a real possibility that what he told you on the stand was the truth, acquit him.
>
> But if you don't think those things, if you look at the evidence and it points to one conclusion, then return a verdict that holds him accountable.

RP (Apr. 2, 2013) at 594. It is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury *must* find that the State's witnesses are lying. *State v. Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996) (citing *State v. Casteneda-Perez*, 61 Wn. App. 354, 362-63, 810 P.2d 74 (1991); *State v. Wright*, 76 Wn. App. 811, 826, 888 P.2d 1214 (1995); *State v. Barrow*, 60 Wn. App. 869, 874-75, 809 P.2d 209 (1991)). However, the prosecutor did not argue that the jury was *required* to believe that the police were lying in order to acquit Forsman. The prosecutor argued that the jury should acquit Forsman if they believed the police were lying, *or* if they believed Forsman had been framed, *or* they found Forsman's testimony credible. Any of the three possibilities, in other words, would be sufficient to acquit Forsman.

It is true that the prosecutor implied that the jury should find Forsman guilty if it did *not* believe any of the three enumerated theories. But the prosecutor immediately thereafter reminded the jury that it should convict Forsman *only* if the evidence led to only "one conclusion." RP (Apr. 2, 2013) at 594. Any prejudice could have been mitigated by a curative instruction once again reminding the jury that it was required to acquit unless it had an abiding belief in Forsman's guilt.

Forsman never requested such a curative instruction. The prosecutor's remarks, in context, were not flagrant or ill-intentioned, but a misstatement that the prosecutor immediately corrected by telling the jury that they should convict Forsman only if the evidence led to no other conclusion.

12

We hold that the prosecutor's remarks do not warrant reversal given the heightened standard of review. *See State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012).

G.     Sufficient Evidence

Forsman argues that the trial court should have granted his motion to dismiss because the evidence was insufficient to go to a jury. We reject his claim.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements beyond a reasonable doubt. *State v. Aten*, 130 Wn.2d 640, 667, 927 P.2d 210 (1996). Upon review of the sufficiency of the evidence, we draw all reasonable inferences from the evidence in the State's favor. *State v. Gregory*, 158 Wn.2d 759, 817, 147 P.3d 1201 (2006) (quoting *State v. Clark*, 143 Wn.2d 731, 769, 24 P.3d 1006, *cert. denied*, 534 U.S. 1000 (2001)). We will not review the jury's determination of the credibility of a witness or evidence. *State v. Myers*, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997) (citing *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)). Rather, we treat all of the State's factual allegations and inferences as true. *State v. Lubers*, 81 Wn. App. 614, 618-19, 915 P.2d 1157 (1996) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

Taking the State's factual allegations and inferences as true, a rational trier of fact could find the elements of unlawful delivery of a controlled substance with school zone enhancements beyond a reasonable doubt. The State's evidence established that the CI met with Forsman three times. Each time, the CI brought only cash into the transaction, and returned with only cocaine. Thus a rational trier of fact could determine that the CI had purchased cocaine from Forsman. Furthermore, the State's evidence established that two of the transactions took place within 1,000 feet of a school bus stop. The evidence was sufficient for the jury to convict Forsman, and Forsman's argument fails. We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Maxa, J.