IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34591-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TIPASA LESUMI UILIATA, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Tipasa Uiliata appeals after his convictions for three counts of first degree unlawful possession of a firearm and two counts of possession of controlled substances with intent to deliver, with the latter counts enhanced because they occurred within 1,000 feet of a school bus route stop. He claims various errors entitle him to relief: (1) two purported errors in the search warrant require the firearms and the controlled substances to be suppressed, (2) neither the warrant nor exigent circumstances permitted seizure of the firearms so the firearms must be suppressed, (3) because there is no record of the trial court's in camera inquiry of the confidential informant, the matter must be remanded for a new inquiry, (4) there is insufficient evidence to prove the school bus route stop enhancements so dismissal of the enhancements is required, and (5) two

scrivener's errors require remand for correction.

The State disagrees with Uiliata's first four arguments, but concedes that remand is required to correct the two scrivener's errors. We agree and remand for correction of the two scrivener's errors but otherwise affirm.

FACTS

Detective Frank Randall of the Klickitat County Sheriff's Office was contacted by a concerned citizen who wanted to provide local drug information and was eager to do controlled buys. Detective Randall enlisted him as a confidential informant (CI). The CI conducted two controlled buys at Roger Neal's residence, a trailer house on Dallesport Road in the town of Dallesport. Both times, the CI purchased $20 worth of methamphetamine. Uiliata was present in the trailer house for both purchases.

On March 24, 2016, Detective Randall applied for a search warrant to search the trailer house. The affidavit appended to the application stated the above facts. It also stated the two controlled drug purchases occurred "[o]n or about the week of March 20-24, 2016," that Uiliata was a wanted fugitive from Oregon for controlled substance deliveries and that he was considered to be armed and dangerous. Clerk's Papers (CP) at 21. The magistrate issued the warrant authorizing law enforcement to search the trailer house and to seize controlled substances, evidence of conspiracy, evidence of dominion

and control, and computer programs and storage disks evidencing drug distribution or currency expenditures.

On March 25, 2016, law enforcement executed the search warrant. Uiliata fled through the back of the trailer house, but was quickly apprehended and arrested. Detective Randall searched the trailer house for items specified in the search warrant. He found paperwork in the front bedroom evidencing that the bedroom belonged to Uiliata. In that bedroom, he also found methamphetamine, heroin, a digital scale, small plastic "baggies" and three firearms—a shotgun in the closet, and two handguns on the bed.

On March 28, 2016, the State charged Uiliata with five felonies: three counts of first degree unlawful possession of a firearm, one count of possession with intent to deliver a controlled substance—heroin, and one count of possession with intent to deliver a controlled substance—methamphetamine. In addition, the State charged enhancements on the two controlled substance counts, alleging that those crimes occurred within 1,000 feet of a school bus route stop.

PROCEDURE

*Suppression motions denied*

Uiliata moved to suppress the seized substances and firearms. He argued that the warrant was stale because it failed to state the specific dates of when the drugs were

3

purchased by the CI.  The court rejected this argument.  Uiliata also argued that the

officers should have obtained a second search warrant before seizing the firearms.  The

court similarly rejected this argument.

*In camera inquiry not recorded*

Uiliata sought to compel the disclosure of the CI's identity.  He argued that he

needed to cross-examine the CI at trial on whether the CI purchased methamphetamine

from him during the two controlled buys.  Uiliata's trial theory was that Neal was selling

drugs, not him, and that the CI was biased against him.  Citing *State v. Petrina*, 73 Wn.

App. 779, 871 P.2d 637 (1994), Uiliata asked the trial court to conduct an in camera

inquiry to determine whether the CI's identity should be disclosed.  The State countered

that the CI's identity was not relevant because it intended to rely solely on the items found

in Uiliata's bedroom to prove the charges.

The trial court determined that Uiliata had made a sufficient preliminary showing

to conduct an in camera inquiry of the CI.  The court, however, failed to make any record

of the inquiry.  Because of this, there is no record of what questions the trial court asked

and what responses the CI gave.[1]

> We glean some insight into the trial court's inquiry from its oral ruling:

> I inquired of the confidential informant—to determine whether he had any
> biases against Mr. Uiliata, whether—what the source of his information
> was, and other matters, and made a determination after that hearing that
> based on my understanding of how the prosecutor will use him as a witness,
> that in fact there is no need to pierce the privilege by the defendant or the
> defense lawyer to know who he is or to get him in court.
>  The [S]tate will be—merely relying on [Detective Randall's]
> affidavit to get the officers into the house and everything will flow from
> that. There won't be any—any statements whatsoever made by the
> confidential informant—There will be nothing said by the officer about
> what the informant said.

Report of Proceedings (RP) at 45-46. After denying disclosure, the trial court entered a

written order. The trial court's order clarified that it would "allow testimony of the CI's

actions but [would] not allow any hearsay statements to be solicited by the State."

Clerk's Papers (CP) at 92.

*Summary of trial testimony and verdict*

The two-day jury trial commenced on July 6, 2016. The State called Roger Neal.

In exchange for favorable treatment by the State, Neal testified that people he did not

---

[1] In appendix C of his opening brief, Uiliata attached a motion to supplement the
record, together with various e-mails of the Klickitat County court administrator and trial
counsel. These e-mails establish that no record of the trial court's inquiry could be found
and that the trial court met in its chambers with the CI and the State. The State does not
object to Uiliata's motion to supplement, which we grant.

know often came to his front door and asked for Uiliata. These people would then enter

Uiliata's bedroom, close the door, and leave soon after. Neal further testified that on a

couple occasions, he facilitated the sale of methamphetamine by taking money given to

him by people who came to his residence and giving the money to Uiliata in exchange for

methamphetamine.

The State also called Detective Randall. He described the procedures for the two

controlled buys at Uiliata's residence. He also described the items he later seized at the

residence, including the firearms, controlled substances, digital scale, and small plastic

baggies found in Uiliata's bedroom.

The State called two witnesses to testify about the distance between where the

offenses occurred and the nearest school bus route stops. The first witness was the

director of transportation for the Lyle School District, the school district for the town of

Dallesport. The witness identified two bus route stops that were within 1,000 feet of

Uiliata's residence on Dallesport Road: one at the intersection of Dallesport Road and

Williams Street, and the other at the intersection of Dallesport Road and Cypress Street.

The second witness was a facilities technician for Klickitat County. He testified

that he used a wheel attached to his car to measure the distances between Uiliata's

property and the two intersections identified by the director. His measurement began at

the sidewalk adjacent to the middle of the trailer house and continued to the middle of the identified intersections. The technician testified that the distance between the boundary of Uiliata's property and the intersection of Dallesport Road and Cypress Street was 141 feet, and the distance between the boundary of Uiliata's property and the intersection of Dallesport Road and Williams Street was 511 feet.

The jury found Uiliata guilty of the charged offenses and found that the bus route stop enhancements applied. The trial court entered a judgment of conviction and sentenced Uiliata. He timely appealed.

## ANALYSIS

1. THE SEARCH WARRANT WAS PROPERLY ISSUED

   a. *The information was not stale*

Uiliata first contends that because the search warrant affidavit contained a five-day range of dates, March 20-24, the information in it was too stale to issue a warrant. We disagree.

Probable cause to issue a warrant is established if the supporting affidavit sets forth "facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity." *State v. Huft*, 106 Wn.2d 206, 209, 720 P.2d 838 (1986). This court tests the affidavit in a common sense rather than hyper-technical manner. *State*

*v. Jackson*, 150 Wn.2d 251, 265, 76 P.3d 217 (2003).  The existence of probable cause is

a legal question that a reviewing court reviews de novo.  *State v. Chamberlin*, 161 Wn.2d

30, 40, 162 P.3d 389 (2007).  However, we afford great deference to the issuing

magistrate's determination of probable cause.  *State v. Cord*, 103 Wn.2d 361, 366, 693

P.2d 81 (1985).

Facts supporting the issuance of a search warrant must support the conclusion that

the evidence is probably at the premises to be searched at the time the judge issues the

warrant.  *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012).  Common sense is the

test for staleness of a search warrant affidavit's information.  *State v. Maddox*, 152 Wn.2d

499, 505, 98 P.3d 1199 (2004).  Accordingly, the issuing judge must determine whether

the passage of time between the officer's or informant's observations and the application

for a warrant "is so prolonged that it is no longer probable that a search will reveal

criminal activity or evidence, i.e., that the information is stale."  *Lyons*, 174 Wn.2d at

360-61.  The issuing judge determines staleness based on the totality of the

circumstances.  *Id.* at 361.

Here, the investigation took place during a five-day period and law enforcement

applied for the warrant on the fifth day.  We hold that the magistrate and the trial court

were correct in holding that this period of time did not render the information in the

affidavit stale.  *See State v. Perez*, 92 Wn. App. 1, 8-9, 963 P.2d 881 (1998) (holding that waiting three or four days after the last controlled buy in a continuing drug operation did not render the warrant invalid).

b.      *Independent police work corroborated the CI's credibility*

Uiliata argues that the affidavit provides conclusory statements as to the informant's credibility and does not give sufficient information to the magistrate to make a probable cause determination.  The State responds that the two controlled buys sufficiently corroborated the CI's credibility.  We agree.

Although abandoned in the federal system, under Washington law, courts still evaluate an informant's reliability under the two-pronged *Aguilar/Spinelli* test.  *State v. Jackson*, 102 Wn.2d 432, 436, 438, 688 P.2d 136 (1984) (citing *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), *but adhered to by Jackson*, 102 Wn.2d 432).  Under this approach, to create probable cause the officer's affidavit must establish (1) the reliability of the informant's basis of knowledge, and (2) the veracity of the informant. *Jackson*, 102 Wn.2d at 435.  If the informant's tip fails under either prong, "probable

9

cause may yet be established by independent police investigatory work that corroborates the tip . . . ." *Id.* at 438.

Here, the two controlled buys corroborated the informant's claim that he could procure drugs from where Uiliata lived. Even though Detective Randall's affidavit contained conclusory statements about the informant's veracity, the controlled buys satisfy both prongs of the *Aguilar*/*Spinelli* test. *See State v. Casto*, 39 Wn. App. 229, 234, 692 P.2d 890 (1984) (properly executed controlled buy conducted by CI generally satisfies both prongs of the *Aguilar*/*Spinelli* test).

2.    THE FIREARMS WERE PROPERLY SEIZED

Uiliata next argues that the trial court erred when it denied his motion to suppress the eight[2] firearms. Uiliata argued below and on appeal that neither the search warrant nor exigent circumstances permitted the firearms to be seized. We disagree with his argument.

If officers discover an item immediately recognizable as contraband during their search, the item is subject to seizure under the plain view doctrine. *State v. Temple*, 170 Wn. App. 156, 164, 285 P.3d 149 (2012). In order for an item to be immediately

---

[2] We limit our analysis to the three firearms found in Uiliata's bedroom. He was not charged with firearm offenses relating to the five firearms found outside his bedroom.

recognizable as contraband, the officer need not possess certain knowledge that the item

is contraband. *State v. Gonzales*, 46 Wn. App. 388, 400, 731 P.2d 1101 (1986). Rather,

the test is whether, "considering the surrounding circumstances, the police can reasonably

conclude that the [item is] incriminating evidence." *State v. Hudson*, 124 Wn.2d 107,

118, 874 P.2d 160 (1994).

Here, Detective Randall testified he knew that Uiliata was precluded from

possessing firearms and that he found three firearms in Uiliata's bedroom during his

search for items specified in the search warrant. We conclude that the trial court properly

denied Uiliata's motion to suppress the three firearms.

3. FAILURE TO RECORD UNNECESSARY IN CAMERA HEARING WAS HARMLESS
ERROR

Uiliata argues that the trial court erred in failing to create a record of the in camera

inquiry with the CI. He claims that the failure to create a record prevents effective

appellate review and thus requires a new in camera inquiry.

Before addressing Uiliata's argument, we must first discuss when an in camera

inquiry of a CI is and is not warranted.

> An in camera inquiry by a court into the nature of a confidential
> informant's information is a proper means of determining whether
> compulsory disclosure of the informant's identity is required to protect the
> constitutional rights of the accused. The court is authorized to conduct an
> in camera [inquiry] under CrR 4.7(h)(6).

11

> An in camera [inquiry] is necessary when the defendant makes an initial showing that the confidential informant may have evidence that would be relevant to the defendant's innocence. An in camera [inquiry] will not be conducted, however, if the defendant's contention that the informant may have relevant information is based upon speculation.

12 ROYCE A. FERGUSON, WASHINGTON PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 2512 (3d ed. 2004).

Conversely, a defendant does not have a constitutional right to disclosure of an informant's identity when the information provided by the informant relates only to probable cause and not to guilt or innocence. *State v. Selander*, 65 Wn. App. 134, 138 n.1, 827 P.2d 1090 (1992) (citing *McCray v. Illinois*, 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967)). In that event, an in camera inquiry is not warranted.

The State concedes that the trial court erred by not recording its inquiry with the CI. The State argues that Uiliata cannot show how this error prejudiced him. Specifically, the State argues that the information provided by the CI was used only to obtain probable cause for the search warrant and that Uiliata was not charged with crimes relating to the two controlled buys.

To determine whether an in camera inquiry was warranted, we now turn to the two reasons Uiliata sought disclosure of the CI's identity. Uiliata first argued that disclosure was required to establish that the CI purchased methamphetamine from Neal, not him.

We do not believe that this would be a sufficient reason for disclosure. Even had the CI purchased methamphetamine from Neal, Uiliata was not charged for crimes relating to those prior purchases. Instead, Uiliata was charged based on the items law enforcement found in his bedroom: methamphetamine, heroin, small plastic baggies, and a digital scale. We conclude that Uiliata's first argument for obtaining an in camera inquiry was insufficient.

Uiliata also argued that disclosure of the CI's identity was necessary to establish bias against him. We do not believe that this would be a sufficient reason for disclosure either. Even if the CI was biased against Uiliata, this bias does not account for the controlled substances, small plastic baggies, and digital scale found in Uiliata's bedroom. Uiliata does not contend that the CI snuck into the trailer house and planted these items in his bedroom. Uiliata's second argument for obtaining an in camera inquiry was also insufficient.

Because an in camera inquiry was not warranted, the lack of a record does not prejudice Uiliata. We conclude that Uiliata is not entitled to a new in camera inquiry.

4. SUFFICIENT EVIDENCE FOR SCHOOL BUS ROUTE STOP ENHANCEMENT

Uiliata claims the State failed to produce sufficient evidence that he committed the drug offenses within 1,000 feet of a school bus route stop.

13

When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* In a challenge to the sufficiency of the evidence, circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

RCW 69.50.435(1)(c) states that a defendant is subject to a school bus route stop sentencing enhancement if he or she violates RCW 69.50.401 by delivering a controlled substance "[w]ithin one thousand feet of a school bus route stop designated by the school district."

### a. Temporal requirement sufficiently established

Uiliata argues that the State provided insufficient evidence that either of the two school bus route stops identified by its witnesses existed on the date of the offense, March 25, 2016. While this is true, the testimony of the State's school bus stop witnesses occurred on July 6, 2016. A trier of fact could reasonably infer from the director's

14

testimony that the two identified school bus route stops were for the most recent school year.

### b. Distance requirement sufficiently established

Uiliata argues that the location of the charged offenses was his bedroom, not the sidewalk adjacent to his property line. Uiliata argues that the State's proof was therefore insufficient to establish the 1,000 foot proximity between his bedroom and either school bus route stop.

In *State v. Clayton*, 84 Wn. App. 318, 927 P.2d 258 (1996), we reviewed the evidentiary sufficiency of a school zone enhancement. There, the State was required to prove that the defendant manufactured marijuana within 1,000 feet of a school playground. *Id.* at 321. The State established that the distance between a school playground and the edge of the property where defendant's offense occurred was 926 feet. *Id.* at 322. The State also established that the distance between the edge of the subject property and the house where the offense occurred was 30 feet. *Id.* We held that the terminus of the 1,000 foot measurement must be the actual site where the offense occurred, not the property line or the house. *Id.* at 321-22. Because the State failed to present such evidence, we reversed the enhancement. *Id.* at 322-23.

The State argues that *Clayton* is distinguishable. We agree. In *Clayton*, the 1,000 foot terminus extended only 74 feet[3] into the property, which might not include all rooms within the house. Whereas here, the 1,000 foot terminus extends 859 feet[4] into the property.

Uiliata lived in a trailer house in the town of Dallesport. From this evidence, the State asks us to infer that Uiliata lived on a lot small enough so that all parts of the trailer house would be within 859 feet of the middle of the front edge of his property line. This distance is equivalent to almost three football fields. We believe that such an inference is justified. We conclude that the State presented sufficient evidence for a rational trier of fact to have found beyond a reasonable doubt that the distance between where the offense occurred and the closest school bus route stop was within 1,000 feet.

### c. *Definitional requirement established*

Uiliata argues that the State presented insufficient evidence that the route stop was for a school bus, as defined by statute.

RCW 69.50.435(6)(b) defines "school bus" as:

---

[3] 1,000 feet minus 926 feet.

[4] 1,000 feet minus 141 feet.

16

[A] school bus . . . owned and operated by any school district and all school buses which are privately owned and operated under contract . . . for the transportation of students. The term does not include buses operated by common carriers in the urban transportation of students such as transportation of students through a municipal transportation system.

Here, the State presented the testimony of the school district transportation director. Admittedly, the school district transportation director testified repeatedly about "bus stops," not *school* bus stops. RP at 198. Nevertheless, given the nature of the witness's employment and the requirement that the State is entitled to the benefit of all reasonable inferences from the record, we conclude that the school district director's testimony concerned school bus route stops, not municipal bus route stops.

In sum, we conclude that the State presented sufficient evidence to prove the school bus route stop enhancements beyond a reasonable doubt.

5.    UNDISPUTED SCRIVENER'S ERRORS

The judgment and sentence contains two scrivener's errors that should be corrected on remand. First, the judgment and sentence provides the wrong statutory citation for the unlawful possession of a firearm offenses. The judgment lists RCW 6.41.040 but the correct provision is RCW 9.41.040.

No. 34591-2-III
*State v. Uiliata*

Second, the judgment indicates the offenses were committed while Uiliata was on community placement or community custody. However, the sentencing court specifically found the offenses were not committed while on supervision.

These errors are undisputed by the State. We direct the trial court to correct these two errors on remand.

6.    APPELLATE COSTS

In a separate motion, Uiliata requests that we deny the State an award of appellate costs in the event the State substantially prevails. We deem the State the substantially prevailing party. If the State seeks appellate costs, we defer the award of appellate costs to our commissioner in accordance with RAP 14.2.

Affirmed, but remanded to correct scrivener's errors.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

18