

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36312-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL W. WITHEY, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Michael Withey appeals convictions for attempting to elude a police vehicle and possession of a stolen vehicle. He challenges the denial of his motion to discover the identity of a confidential informant and asserts claims of ineffective assistance of counsel, prosecutorial misconduct, and the improper imposition of two court costs. We affirm the convictions but remand with directions to strike two fees from his judgment and sentence.

## FACTS AND PROCEDURAL BACKGROUND

Late in the evening on the ides of March, 2017, Spokane patrol officers learned of an informant's report that Michael Withey, who was wanted on local and Idaho warrants and was believed to be driving a stolen white Chevy Malibu, might be found at a Walmart store in Airway Heights. Officer Scott Lesser was working that night and

responded. He had previously seen photographs of both Mr. Withey and the stolen

vehicle in flyers and on Facebook pages. He was also able to pull up a photograph of Mr.

Withey on the computer screen in his patrol car. Upon arriving at the Walmart store, he

saw a car meeting the description of the stolen Malibu in the parking lot. He contacted

Officer Winston Brooks for assistance and waited for him to arrive.

Because Officer Brooks was driving an unmarked sedan that night, he was the first

of several officers in the area to approach the suspect Malibu. He, too, had seen

photographs and information about Mr. Withey prior to March 15, and was able to pull

up a photo as he drove toward Airway Heights. He would later testify that as he drove

through the parking lot, he slowed down in front of the Malibu and saw Mr. Withey in

the driver's seat. He claimed to be able to see "very clear[ly]" and was "[o]ne hundred

percent sure" it was Mr. Withey, which he radioed to Officer Lesser and other officers in

the vicinity. Report of Proceedings (RP)[1] at 74-75. As Officer Brooks continued out of

the parking lot, the Malibu also began to leave, following the same path.

At that point, Officer Lesser drove toward the Malibu and passed it; he would later

testify that he could "clearly see into the vehicle" and was "sure" the driver was Mr.

Withey. RP at 49-50. He then pulled behind the Malibu as it left the parking lot onto

Hayford Road and activated his lights to make a traffic stop.

---

[1] Unless otherwise indicated, references to the report of proceedings are to the volume of proceedings that includes the two-day trial and sentencing.

The driver of the Malibu originally complied and pulled over, but as Officer Lesser walked toward the car, he accelerated and drove off. Officer Lesser got back in his own car and attempted to catch up with the Malibu without success. Officer Brooks, who had been returning, intending to block the Malibu after Officer Lesser's traffic stop, also attempted to give chase. Both officers described the Malibu as speeding; according to Officer Lesser, there was a lot of traffic on Hayford Road that night and the Malibu was traveling at speeds of "90 to 100 miles an hour, plus." RP at 54. The pursuit was soon terminated for public safety reasons.

Two days later, Spokane Police Corporal Shane Oien, who was aware of the elude incident but had not participated in it, responded to a report of "a vehicle . . . abandoned in a nearby property," which turned out to be the stolen Malibu. RP at 115. It was parked off the road behind a raised dirt pile; according to Corporal Oien, "It looked like it had been deliberately hidden." RP at 117.

Later, a cell phone apparently belonging to Mr. Withey was turned into police. The phone had been found on the ground by a woman who lived in the vicinity of where the stolen Malibu was found. She was confident it was dropped the day she found it or sometime the night before. Although she was not sure of the exact day she found it, a neighbor from whom she sought help trying to identify the phone's owner later testified that it was found between the dates of March 16 and 17, 2017. The neighbor's son would later testify that he found the name "Michael Withey" on the phone and turned it over to

3

law enforcement after an internet search turned up a Kootenai County press release on a warrant for a Michael Withey.  RP at 110-11.

Officer Lesser obtained a warrant to search the phone,  Although he found no information tying Mr. Withey to any crimes, he did find pictures of Mr. Withey and his Facebook feed, satisfying him that "it was, indeed, his phone."  RP at 57.

The State charged Mr. Withey with attempting to elude a police vehicle.  It later amended the information to add a charge of possession of a stolen vehicle.

Before trial, Mr. Withey moved to compel disclosure of the identity of the confidential informant (CI) who told police Mr. Withey would be at the Walmart.  Mr. Withey's lawyer explained to the court that his client had an alibi and contended the officers' identification of him as the driver was mistaken.  To attack their identification, she argued, she needed to explore "what the influences were on the officer that led up to that identification . . . because there was so much influence on the officers themselves when they went to go track down Mr. Withey."  RP (Mar. 15, 2018) (CrR 4.7 hearing) at 6-7.  She claimed a need to know if the CI "has any criminal history, if he has any biases." *Id.* at 6.

The trial court denied the motion, pointing out that the State did not intend to call the CI as a witness or make reference to the CI's existence, and the CI had no evidence to offer on the charge against Mr. Withey or his defense of alibi.

4

On the morning of trial, the court heard motions in limine, including Mr. Withey's

motion to exclude any reference to his pending cases and warrants. The State objected to

excluding evidence about the warrants, arguing that Mr. Withey's warrant status

explained why officers were looking for him on the night of March 15, and gave Mr.

Withey a motive for running from law enforcement. The trial court found the probative

value of the warrant status to outweigh prejudice to Mr. Withey, but added, "With that

said, there are a couple things that don't need to be disclosed. One is the underlying

charges or the underlying reasons for the warrants. And I think secondly there doesn't

need to be plural warrants. I think just 'warrant' is fine." RP at 18. The court offered to

give a limiting instruction, if requested.

The State called Officers Lesser and Brooks to testify to the events of March 15.

When questioned about why he was looking for Mr. Withey that night, Officer Lesser

answered, in part, that he had information that he was in a stolen vehicle "as well as

knowing him to have a felony warrant." RP at 45. The defense did not object.

The State called Corporal Oien and the three witnesses involved in discovering the

cell phone and turning it over to police. It also called the owner and insurer of the stolen

Chevy Malibu.

The defense called two witnesses: Starla Dillard and Jacob Lorenzo. Both

testified that Mr. Withey had been at their home on March 15, 2017, working on floors,

and that he had worked well into the evening and stayed overnight. Both claimed to

remember the date because March 15 is their anniversary, and they cancelled plans to go out. Both testified that Mr. Withey did not have a car during the visit.

During closing, the prosecutor argued:

[I]t's not a coincidence, in any way, that his phone shows up within a quarter mile or whatever . . . on the same road where the car is dumped. Why would his phone show up there? Yes, they thought it could be somebody else, the—the civilians did, until they found out it was Mr. Withey, because they saw the warrant that he was also running from. They knew that—I'm sorry.

RP at 209. The defense did not object.

The jury found Mr. Withey guilty as charged, with a special finding that his attempt to elude the police threatened the safety of someone other than himself or law enforcement. The court granted a defense request for a prison-based drug offender sentencing alternative. Mr. Withey appeals.

ANALYSIS

I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING DISCOVERY OF THE CI'S IDENTITY

Mr. Withey's first assignments of error are that the trial court erred in denying discovery of the identity of the CI and in failing to hold an in camera hearing on the discovery issue.

"Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant." CrR 4.7(f)(2). This "informer's privilege" is

6

intended to encourage citizens to provide information to law enforcement. *State v. Atchley*, 142 Wn. App. 147, 154-55, 173 P.3d 323 (2007). The United States Supreme Court has described the decision whether to order disclosure of an informant's identity as a fact-based balancing of the public interest in protecting the flow of information against a defendant's ability to prepare a defense, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro v. United States*, 353 U.S. 53, 62, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957). "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.

The preferred method for deciding whether disclosure is necessary is for the court to hold an in camera session at which the judge hears the informer's testimony and applies the *Roviaro* standard. *State v. Harris*, 91 Wn.2d 145, 150, 588 P.2d 720 (1978). Whether a hearing must be held "depends upon whether the informant is a material witness on the question of a defendant's guilt or innocence," however. *State v. Vargas*, 58 Wn. App. 391, 395, 793 P.2d 455 (1990).

The burden is on the defendant to show that a hearing and disclosure are necessary. *Id.* He must show "a basis in fact to establish that his demand does not have an improper motive and is not merely an angling in desperation for possible weaknesses in the prosecution's investigation." *Id.* at 396. A trial court's decisions whether to

compel disclosure or hold an in camera hearing are reviewed for abuse of discretion. *State v. Petrina*, 73 Wn. App. 779, 782-83, 871 P.2d 637 (1994).

The ostensible concern of Mr. Withey's lawyer was that because Officers Lesser and Brooks arrived at the Walmart parking lot believing (based on the CI's report) that they would find Mr. Withey there, the preconception undermined the reliability of their identification. She argued to the court that Mr. Withey needed to know if the CI "has any criminal history [or] if he has any biases." RP (Mar. 15, 2018) (CrR 4.7 hearing) at 6. But an argument that the officers' preconceptions undermined the reliability of their identifications could be made whether the CI was biased or unbiased. It could be made whether or not the CI had a criminal history. Information about the CI was irrelevant.

And at trial, the defense *did* challenge the reliability of the officers' identifications based on their expectation they would find Mr. Withey. Defense counsel's lead-off questions to Officer Lesser established that he received information that Mr. Withey would be with the stolen vehicle at Walmart and went there looking for him. Its lead-off question to Officer Brooks established that he, too, had received the information that Mr. Withey would be at the Walmart. And its closing argument led with the suggestion that the officers' identification should be discounted because they approached the Walmart believing that Mr. Withey would be in the stolen car there. Speaking of Officer Lesser, who got there first, defense counsel argued he "knew that he was only looking for Mr. Withey. He didn't have anyone else in his mind of who he was looking for." RP at 200.

8

Mr. Withey offers no viable argument that information the defense might have learned about the CI would be relevant to the state of mind or perception of Officers Lesser or Brooks. He fails to meet his burden of showing that disclosure was necessary.

As for his contention that the trial court erred by failing to conduct an in camera hearing, Mr. Withey never requested one. He cites no authority for the proposition that a trial court should undertake such a hearing sua sponte. And here again, he offers no viable argument that information the court might have learned in an in camera hearing would be relevant to the state of mind or perception of Officers Lesser or Brooks.

The trial court did not abuse its discretion.

II. MR. WITHEY DOES NOT DEMONSTRATE DEFICIENT REPRESENTATION SUPPORTING A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Withey argues he was denied effective assistance of counsel at three points during the trial:

- When his lawyers failed to object to Officer Lesser's testimony that Mr. Withey was under a "felony warrant,"
- When his lawyers failed to request a limiting instruction addressing testimony about his warrant status, and
- When his lawyers failed to object to a statement by the prosecutor in closing argument that Mr. Withey was "running from" a warrant.

Appellant's Opening Br. at 20-22.

Effective assistance of counsel is guaranteed by both the federal and state constitutions. U.S. CONST. AMEND. VI; WASH. CONST. art. I, § 22; *Strickland v.*

*Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Estes*,

188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To demonstrate ineffective assistance of

counsel, a defendant must show both that defense counsel's representation was deficient,

i.e., it fell below an objective standard of reasonableness; and that the deficient

representation prejudiced the defendant, i.e., there is a reasonable probability that, except

for counsel's unprofessional errors, the result of the proceeding would have been

different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Failure to

establish either prong is fatal, and this court need not consider both prongs if a claim can

be disposed of on one ground. *Strickland*, 466 U.S. at 697.

Mr. Withey's first claim of ineffective assistance is to his lawyers' failure to object

when, during direct examination, Officer Lesser said that in looking for Mr. Withey on

March 15, he knew Mr. Withey had a "felony" warrant. Mr. Withey argues referring to a

"felony" warrant was "in direct contradiction to the trial court's instruction in limine."

Appellant's Opening Br. at 20. Whether it contradicted the trial court's instruction is not

clear. The trial court told the prosecutor to instruct her witnesses "not [to] go into more

than one warrant or *the underlying reasons* for the warrants." RP at 18 (emphasis added).

This was shortly after commenting that "*the underlying charges or the underlying*

*reasons* for the warrants" did not need to be disclosed. *Id.* (emphasis added). Either the

prosecutor, or Officer Lesser, or both, might have understood the trial court to be

precluding reference to the charges, but not to whether the warrant was a felony warrant.

10

Defense lawyers commonly refrain from objecting to a damaging reference that is fleeting, even if they believe an objection would be sustained. They recognize that by objecting, they draw attention to the damaging matter. Here, Mr. Withey's lawyers might have had the additional concern that if the trial court did not perceive its in limine instruction to have been violated, it would *overrule* the objection, compounding the problem of drawing attention to the "felony" reference. We strongly presume "that counsel's representation was reasonable." *Estes*, 188 Wn.2d at 458. Mr. Withey does not overcome that presumption with respect to this failure to object.

He next contends that once the trial court ruled that it would permit testimony on his warrant status, his lawyers should have requested a limiting instruction. The trial court offered to give an instruction, if requested, that the jury could only consider the warrants as explaining why law enforcement contacted Mr. Withey and a potential motive for fleeing. It is well settled that declining to request a limiting instruction is a legitimate tactical decision not to re-emphasize damaging evidence. *E.g., State v. Yarbrough*, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009). Deficient representation is not shown.

Finally, Mr. Withey contends his lawyers should have objected when, during closing argument, the prosecutor referred to civilians turning in Mr. Withey's cell phone after they "saw the warrant that he was also running from." RP at 209. He contends the statement was objectionable because it improperly implied that the warrant outstanding

11

against him was a criminal one, which he argues violated limits the court had placed on testimony about warrants.

In ruling on the in limine motion, the trial court said Mr. Withey's warrant status could be presented as evidence of motive for running from police. Defense counsel recognized as much. Mr. Withey moved to dismiss the possession of a stolen vehicle charge at half time on the basis that the State had not presented evidence that he knew the car was stolen. In response to a State argument that his attempt to elude was evidence, Mr. Withey's lawyer responded,

> [T]he State has also established that Mr. Withey had warrants out for his arrest at the time, and I think it's reasonable to think that he would have ran because of those warrants. I don't think running from law enforcement is enough to establish that he knew a vehicle was stolen.

RP at 145-46. Evidence that Mr. Withey ran from police was before the jury in accordance with the trial court's in limine ruling. Mr. Withey does not show deficient representation because he does not show that an objection to the prosecutor's argument would have been sustained.

III.    NO PROSECUTORIAL MISCONDUCT IS SHOWN

Mr. Withey argues that the prosecutor committed misconduct during closing argument when he said the civilians who found the cell phone "saw the warrant that he was also running from." RP at 209. Here, too, he argues that "[t]he comment was improper because it strongly implied Mr. Withey was evading law enforcement due to a

12

criminal warrant . . . contrary to the trial court's pretrial order." Appellant's Opening Br. at 23.

To prevail on a claim of prosecutorial misconduct, the defendant must establish that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn. 2d 438, 442, 258 P.3d 43 (2011). Because Mr. Withey did not object in the trial court, he must demonstrate that the misconduct was so flagrant and ill-intentioned that no curative instruction would have obviated the prejudice it engendered. *State v. O'Donnell*, 142 Wn. App. 314, 328, 174 P.3d 1205 (2007). The trial court did not exclude evidence suggesting that Mr. Withey was running from a warrant. No prosecutorial misconduct is shown.

IV.   LEGAL FINANCIAL OBLIGATION (LFO) RELIEF

Finally, Mr. Withey argues he is entitled to have the $200 criminal filing fee and deoxyribonucleic acid (DNA) collection fee struck from his judgment and sentence because he is indigent and has previously provided a DNA sample.

Mr. Withey was sentenced on August 23, 2018. A little over two months earlier, on June 7, Engrossed Second Substitute House Bill 1783, 65th Leg., Reg. Sess. (Wash. 2018), became effective, amending the criminal filing fee statute, former RCW 36.18.020(2)(h) (2015), to prohibit courts from imposing the $200 filing fee on indigent defendants. LAWS OF 2018, ch. 269, § 17(2)(h). It also amended former RCW 43.43.7541 (2015) to make the DNA database fee no longer mandatory if the state has

previously collected the offender's DNA as a result of a prior conviction. LAWS OF 2018, ch. 269, § 18.

The trial court asked Mr. Withey's lawyer at sentencing if she wanted to be heard on LFOs, and she said no, the parties were in agreement. The State does not ask us to treat the error as unpreserved, however, and joins in the request that we remand to the trial court for what it contends, and we agree, will be a ministerial correction.

We affirm the convictions. We remand with directions to strike the $200 criminal filing fee and the $100 DNA collection fee from Mr. Withey's judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.

14